# RICHARDS *v.* WISCONSIN

No. 96–5955.   Argued March 24, 1997—Decided April 28, 1997

386

*David R. Karpe*, by appointment of the Court, 519 U. S. 1106, argued the cause for petitioner. With him on the briefs were *John Wesley Hall, Jr., Henry R. Schultz,* and *Jack E. Schairer.*

*James E. Doyle*, Attorney General of Wisconsin, argued the cause for respondent. With him on the brief was *Stephen W. Kleinmaier*, Assistant Attorney General.

*Miguel A. Estrada* argued the cause for the United States as *amicus curiae* urging affirmance. On the brief were *Acting Solicitor General Dellinger, Acting Assistant Attorney*

*General Richard*, Deputy Solicitor General Dreeben, James A. Feldman, and *Deborah Watson.*[*]

JUSTICE STEVENS delivered the opinion of the Court.

In *Wilson* v. *Arkansas*, 514 U. S. 927 (1995), we held that the Fourth Amendment incorporates the common-law requirement that police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry. At the same time, we recognized that the "flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests," *id.*, at 934, and left "to the lower courts the task of determining the circumstances under which an unannounced entry is reasonable under the Fourth Amendment," *id.*, at 936.

In this case, the Wisconsin Supreme Court concluded that police officers are *never* required to knock and announce their presence when executing a search warrant in a felony

---

[*]*Tracey Maclin, Steven R. Shapiro*, and *Lisa B. Kemler* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the State of Ohio et al. by *Betty D. Montgomery*, Attorney General of Ohio, *Jeffrey S. Sutton*, State Solicitor, *Simon B. Karas*, and *Diane R. Richards*, and by the Attorneys General for their respective jurisdictions as follows: *Bill Pryor* of Alabama, *Bruce M. Botelho* of Alaska, *Winston Bryant* of Arkansas, *M. Jane Brady* of Delaware, *Robert A. Butterworth* of Florida, *Gus F. Diaz* of Guam, *Alan G. Lance* of Idaho, *James E. Ryan* of Illinois, *Carla J. Stovall* of Kansas, *A. B. Chandler III* of Kentucky, *Richard P. Ieyoub* of Louisiana, *J. Joseph Curran* of Maryland, *Frank J. Kelley* of Michigan, *Mike Moore* of Mississippi, *Joseph P. Mazurek* of Montana, *Don Stenberg* of Nebraska, *Thomas J. Miller* of Iowa, *Frankie Sue Del Papa* of Nevada, *Steven M. Houran* of New Hampshire, *Peter Verniero* of New Jersey, *Tom Udall* of New Mexico, *Jose Fuentes Agostini* of Puerto Rico, *Jeffrey B. Pine* of Rhode Island, *Charles Molony Condon* of South Carolina, *Mark W. Barnett* of South Dakota, *Jan Graham* of Utah, and *James Gilmore III* of Virginia; and for Americans for Effective Law Enforcement, Inc., et al. by *Fred E. Inbau, Wayne W. Schmidt, James P. Manak, Richard M. Weintraub*, and *Bernard J. Farber.*

drug investigation. In so doing, it reaffirmed a pre-*Wilson* holding and concluded that *Wilson* did not preclude this *per se* rule. We disagree with the court's conclusion that the Fourth Amendment permits a blanket exception to the knock-and-announce requirement for this entire category of criminal activity. But because the evidence presented to support the officers' actions in this case establishes that the decision not to knock and announce was a reasonable one under the circumstances, we affirm the judgment of the Wisconsin court.

I

On December 31, 1991, police officers in Madison, Wisconsin, obtained a warrant to search Steiney Richards' motel room for drugs and related paraphernalia. The search warrant was the culmination of an investigation that had uncovered substantial evidence that Richards was one of several individuals dealing drugs out of hotel rooms in Madison. The police requested a warrant that would have given advance authorization for a "no-knock" entry into the motel room, but the Magistrate explicitly deleted those portions of the warrant. App. 7, 9.

The officers arrived at the motel room at 3:40 a.m. Officer Pharo, dressed as a maintenance man, led the team. With him were several plainclothes officers and at least one man in uniform. Officer Pharo knocked on Richards' door and, responding to the query from inside the room, stated that he was a maintenance man. With the chain still on the door, Richards cracked it open. Although there is some dispute as to what occurred next, Richards acknowledges that when he opened the door he saw the man in uniform standing behind Officer Pharo. Brief for Petitioner 6. He quickly slammed the door closed and, after waiting two or three seconds, the officers began kicking and ramming the door to gain entry to the locked room. At trial, the officers testified that they identified themselves as police while they were kicking the door in. App. 40. When they finally did break

into the room, the officers caught Richards trying to escape through the window. They also found cash and cocaine hidden in plastic bags above the bathroom ceiling tiles.

Richards sought to have the evidence from his motel room suppressed on the ground that the officers had failed to knock and announce their presence prior to forcing entry into the room. The trial court denied the motion, concluding that the officers could gather from Richards' strange behavior when they first sought entry that he knew they were police officers and that he might try to destroy evidence or to escape. *Id.*, at 54. The judge emphasized that the easily disposable nature of the drugs the police were searching for further justified their decision to identify themselves as they crossed the threshold instead of announcing their presence before seeking entry. *Id.*, at 55. Richards appealed the decision to the Wisconsin Supreme Court and that court affirmed. 201 Wis. 2d 845, 549 N. W. 2d 218 (1996).

The Wisconsin Supreme Court did not delve into the events underlying Richards' arrest in any detail, but accepted the following facts: "[O]n December 31, 1991, police executed a search warrant for the motel room of the defendant seeking evidence of the felonious crime of Possession with Intent to Deliver a Controlled Substance in violation of Wis. Stat. § 161.41(1m) (1991–92). They did not knock and announce prior to their entry. Drugs were seized." *Id.*, at 849, 549 N. W. 2d, at 220.

Assuming these facts, the court proceeded to consider whether our decision in *Wilson* required the court to abandon its decision in *State* v. *Stevens*, 181 Wis. 2d 410, 511 N. W. 2d 591 (1994), cert. denied, 515 U. S. 1102 (1995), which held that "when the police have a search warrant, supported by probable cause, to search a residence for evidence of delivery of drugs or evidence of possession with intent to deliver drugs, they necessarily have reasonable cause to believe exigent circumstances exist" to justify a no-knock entry. 201 Wis. 2d, at 852, 549 N. W. 2d, at 221. The court concluded

that nothing in *Wilson*'s acknowledgment that the knock-and-announce rule was an element of the Fourth Amendment "reasonableness" requirement would prohibit application of a *per se* exception to that rule in a category of cases. 201 Wis. 2d, at 854–855, 549 N. W. 2d, at 220.

In reaching this conclusion, the Wisconsin court found it reasonable—after considering criminal conduct surveys, newspaper articles, and other judicial opinions—to assume that all felony drug crimes will involve "an extremely high risk of serious if not deadly injury to the police as well as the potential for the disposal of drugs by the occupants prior to entry by the police." *Id.*, at 847–848, 549 N. W. 2d, at 219. Notwithstanding its acknowledgment that in "some cases, police officers will undoubtedly decide that their safety, the safety of others, and the effective execution of the warrant dictate that they knock and announce," *id.*, at 863, 549 N. W. 2d, at 225, the court concluded that exigent circumstances justifying a no-knock entry are always present in felony drug cases. Further, the court reasoned that the violation of privacy that occurs when officers who have a search warrant forcibly enter a residence without first announcing their presence is minimal, given that the residents would ultimately be without authority to refuse the police entry. The principal intrusion on individual privacy interests in such a situation, the court concluded, comes from the issuance of the search warrant, not the manner in which it is executed. *Id.*, at 864–865, 549 N. W. 2d, at 226. Accordingly, the court determined that police in Wisconsin do not need specific information about dangerousness, or the possible destruction of drugs in a particular case, in order to dispense with the knock-and-announce requirement in felony drug cases.[1]

---

[1] Several other state courts—in cases that predate our decision in *Wilson*—have adopted similar rules, concluding that simple probable cause to search a home for narcotics always allows the police to forgo the knock-and-announce requirement. See, *e. g., People* v. *Lujan*, 484 P. 2d 1238, 1241 (Colo. 1971) (en banc); *Henson* v. *State*, 236 Md. 519, 523–524, 204 A.

Justice Abrahamson concurred in the judgment because, in her view, the facts found by the trial judge justified a no-knock entry. *Id.*, at 866–868, 549 N. W. 2d, at 227. Specifically, she noted that Richards' actions in slamming the door when he saw the uniformed man standing behind Officer Pharo indicated that he already knew that the people knocking on his door were police officers. Under these circumstances, any further announcement of their presence would have been a useless gesture. *Id.*, at 868–869, n. 3, 549 N. W. 2d, at 228, n. 3. While agreeing with the outcome, Justice Abrahamson took issue with her colleagues' affirmation of the blanket exception to the knock-and-announce requirement in drug felony cases. She observed that the constitutional reasonableness of a search has generally been a matter left to the court, rather than to the officers who conducted the search, and she objected to the creation of a blanket rule that insulated searches in a particular category of crime from the neutral oversight of a reviewing judge. *Id.*, at 868–875, 549 N. W. 2d, at 228–230.

## II

· We recognized in *Wilson* that the knock-and-announce requirement could give way "under circumstances presenting a threat of physical violence," or "where police officers have reason to believe that evidence would likely be destroyed if advance notice were given." 514 U. S., at 936. It is indisputable that felony drug investigations may frequently involve both of these circumstances.[2] The question we must

---

2d 516, 519–520 (1964); *State* v. *Loucks*, 209 N. W. 2d 772, 777–778 (N. D. 1973). Cf. *People* v. *De Lago*, 16 N. Y. 2d 289, 292, 213 N. E. 2d 659, 661 (1965) (similar rule for searches related to gambling operations), cert. denied, 383 U. S. 963 (1966).

[2] This Court has encountered before the links between drugs and violence, see, *e. g.*, *Michigan* v. *Summers*, 452 U. S. 692, 702 (1981), and the likelihood that drug dealers will attempt to dispose of drugs before police seize them, see, *e. g.*, *Ker* v. *California*, 374 U. S. 23, 28, n. 3 (1963).

resolve is whether this fact justifies dispensing with case-by-case evaluation of the manner in which a search was executed.[3]

The Wisconsin court explained its blanket exception as necessitated by the special circumstances of today's drug culture, 201 Wis. 2d, at 863–866, 549 N. W. 2d, at 226–227, and the State asserted at oral argument that the blanket exception was reasonable in "felony drug cases because of the convergence in a violent and dangerous form of commerce of weapons and the destruction of drugs." Tr. of Oral Arg. 26. But creating exceptions to the knock-and-announce rule based on the "culture" surrounding a general category of criminal behavior presents at least two serious concerns.[4]

---

[3] Although our decision in *Wilson* did not address this issue directly, it is instructive that in that case—which involved a felony drug investigation—we remanded to the state court for further factual development to determine whether the no-knock entry was reasonable under the circumstances of the case. Two *amicus* briefs in *Wilson* suggested that we adopt just the sort of *per se* rule the Wisconsin court propounded here. Brief for Americans for Effective Law Enforcement, Inc., et al. as *Amici Curiae* 10–11, Brief for Wayne County, Michigan, as *Amicus Curiae* 39–46, in *Wilson* v. *Arkansas*, O. T. 1994, No. 5707. Although the respondent did not argue for a categorical rule, the petitioner, in her reply brief, did address the arguments put forward by the *amicus* briefs, Reply Brief for Petitioner in *Wilson* v. *Arkansas*, O. T. 1994, No. 5707, p. 11, and *amici* supporting the petitioner also presented arguments against a categorical rule. Brief for American Civil Liberties Union et al. as *Amici Curiae* in *Wilson* v. *Arkansas*, O. T. 1994, No. 5707, p. 29, n. 44. Thus, while the prospect of a categorical rule was one to which we were alerted in *Wilson*, we did not choose to adopt such a rule at that time.

[4] It is always somewhat dangerous to ground exceptions to constitutional protections in the social norms of a given historical moment. The purpose of the Fourth Amendment's requirement of reasonableness "is to preserve that degree of respect for the privacy of persons and the inviolability of their property that existed when the provision was adopted—even if a later, less virtuous age should become accustomed to considering all sorts of intrusion 'reasonable.'" *Minnesota* v. *Dickerson*, 508 U. S. 366, 380 (1993) (SCALIA, J., concurring).

First, the exception contains considerable overgeneralization. For example, while drug investigation frequently does pose special risks to officer safety and the preservation of evidence, not every drug investigation will pose these risks to a substantial degree. For example, a search could be conducted at a time when the only individuals present in a residence have no connection with the drug activity and thus will be unlikely to threaten officers or destroy evidence. Or the police could know that the drugs being searched for were of a type or in a location that made them impossible to destroy quickly. In those situations, the asserted governmental interests in preserving evidence and maintaining safety may not outweigh the individual privacy interests intruded upon by a no-knock entry.[5] Wisconsin's blanket rule impermissibly insulates these cases from judicial review.

A second difficulty with permitting a criminal-category exception to the knock-and-announce requirement is that the

---

[5] The State asserts that the intrusion on individual interests effectuated by a no-knock entry is minimal because the execution of the warrant itself constitutes the primary intrusion on individual privacy and that the individual privacy interest cannot outweigh the generalized governmental interest in effective and safe law enforcement. Brief for Respondent 21–24. See also Brief for United States as *Amicus Curiae* 16 ("occupants' privacy interest is necessarily limited to the brief interval between the officers' announcement and their entry"). While it is true that a no-knock entry is less intrusive than, for example, a warrantless search, the individual interests implicated by an unannounced, forcible entry should not be unduly minimized. As we observed in *Wilson* v. *Arkansas*, 514 U. S. 927, 930–932 (1995), the common law recognized that individuals should be provided the opportunity to comply with the law and to avoid the destruction of property occasioned by a forcible entry. These interests are not inconsequential.

Additionally, when police enter a residence without announcing their presence, the residents are not given any opportunity to prepare themselves for such an entry. The State pointed out at oral argument that, in Wisconsin, most search warrants are executed during the late night and early morning hours. Tr. of Oral Arg. 24. The brief interlude between announcement and entry with a warrant may be the opportunity that an individual has to pull on clothes or get out of bed.

reasons for creating an exception in one category can, relatively easily, be applied to others. Armed bank robbers, for example, are, by definition, likely to have weapons, and the fruits of their crime may be destroyed without too much difficulty. If a *per se* exception were allowed for each category of criminal investigation that included a consider-able—albeit hypothetical—risk of danger to officers or de-struction of evidence, the knock-and-announce element of the Fourth Amendment's reasonableness requirement would be meaningless.

Thus, the fact that felony drug investigations may fre-quently present circumstances warranting a no-knock entry cannot remove from the neutral scrutiny of a reviewing court the reasonableness of the police decision not to knock and announce in a particular case. Instead, in each case, it is the duty of a court confronted with the question to deter-mine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement.

In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dan-gerous or futile, or that it would inhibit the effective investi-gation of the crime by, for example, allowing the destruction of evidence. This standard—as opposed to a probable-cause requirement—strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execu-tion of search warrants and the individual privacy interests affected by no-knock entries. Cf. *Maryland* v. *Buie*, 494 U. S. 325, 337 (1990) (allowing a protective sweep of a house during an arrest where the officers have "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene"); *Terry* v. *Ohio*, 392 U. S. 1, 30 (1968) (requiring a reasonable and articulable suspicion of danger to justify a patdown search). This showing is not high, but the police

should be required to make it whenever the reasonableness of a no-knock entry is challenged.

## III

Although we reject the Wisconsin court's blanket exception to the knock-and-announce requirement, we conclude that the officers' no-knock entry into Richards' motel room did not violate the Fourth Amendment. We agree with the trial court, and with Justice Abrahamson, that the circumstances in this case show that the officers had a reasonable suspicion that Richards might destroy evidence if given further opportunity to do so.[6]

The judge who heard testimony at Richards' suppression hearing concluded that it was reasonable for the officers executing the warrant to believe that Richards knew, after opening the door to his motel room the first time, that the men seeking entry to his room were the police. App. 54. Once the officers reasonably believed that Richards knew who they were, the court concluded, it was reasonable for them to force entry immediately given the disposable nature of the drugs. *Id.*, at 55.

In arguing that the officers' entry was unreasonable, Richards places great emphasis on the fact that the Magistrate who signed the search warrant for his motel room deleted the portions of the proposed warrant that would have given the officers permission to execute a no-knock entry. But this fact does not alter the reasonableness of the officers' decision, which must be evaluated as of the time they entered the motel room. At the time the officers obtained the warrant, they did not have evidence sufficient, in the judgment of the Magistrate, to justify a no-knock warrant. Of course,

---

[6] We note that the attorneys general of 26 States, the Commonwealth of Puerto Rico, and the Territory of Guam filed an *amicus* brief taking the position that the officers' decision was reasonable under the specific facts of this case, but rejecting Wisconsin's *per se* rule. See Brief for Ohio et al. as *Amici Curiae.*

the Magistrate could not have anticipated in every particular the circumstances that would confront the officers when they arrived at Richards' motel room.[7] These actual circumstances—petitioner's apparent recognition of the officers combined with the easily disposable nature of the drugs—justified the officers' ultimate decision to enter without first announcing their presence and authority.

Accordingly, although we reject the blanket exception to the knock-and-announce requirement for felony drug investigations, the judgment of the Wisconsin Supreme Court is affirmed.

*It is so ordered.*

---

[7] A number of States give magistrate judges the authority to issue "no-knock" warrants if the officers demonstrate ahead of time a reasonable suspicion that entry without prior announcement will be appropriate in a particular context.  See, *e. g.*, 725 Ill. Comp. Stat., ch. 725, § 5/108–8 (1992); Neb. Rev. Stat. § 29–411 (1995); Okla. Stat., Tit. 22, § 1228 (Supp. 1997); S. D. Codified Laws § 23A–35–9 (1988); Utah Code Ann. § 77–23–210 (1995). But see *State* v. *Arce*, 83 Ore. App. 185, 730 P. 2d 1260 (1986) (magistrate has no authority to abrogate knock-and-announce requirement); *State* v. *Bamber*, 630 So. 2d 1048 (Fla. 1994) (same).

The practice of allowing magistrates to issue no-knock warrants seems entirely reasonable when sufficient cause to do so can be demonstrated ahead of time.  But, as the facts of this case demonstrate, a magistrate's decision not to authorize a no-knock entry should not be interpreted to remove the officers' authority to exercise independent judgment concerning the wisdom of a no-knock entry at the time the warrant is being executed.