**Commonwealth** of the Northern
Mariana Islands,
Plaintiff/Appellee,
**v.**
Jesus Akiyama **Aldan**,
Defendant/Appellant.
Appeal No. 96-034
Criminal Action No. 95-0158
December 4, 1997

Argued and Submitted on October 1, 1997

Counsel for Appellant:  Steven P. Pixley, Saipan.

Counsel for Appellee:   James L. Norcross, Assistant Attorney General, Saipan.

BEFORE:  VILLAGOMEZ and ATALIG, Justices, and WISEMAN, Special Judge.

ATALIG, Justice:

¶1    ■ Jesus Aldan ("Aldan") appeals his conviction for possession of methamphetamine hydrochloride ("ice") pursuant to 6 CMC § 2142(a) and the denial of his motion to suppress.  In addition, Aldan appeals his five year sentence pursuant to 6 CMC § 2142(d)(4).

¶2    This Court has jurisdiction pursuant to title 1, § 3102(a) of the Commonwealth Code.  We reverse.

## ISSUES PRESENTED AND STANDARDS OF REVIEW

---

¶3     ■ Appellant raises five issues on appeal; however, two of the issues are dispositive to this case.[1]

    1. Whether the Superior Court erred in holding that the laws of the Commonwealth sometimes do not require law enforcement agents to knock and announce before conducting a search of homes. This is a constitutional question which we review de novo. *Office of the Attorney Gen. v. Rivera*, 3 N.M.I. 436, 441 (1993).

    2. Whether the Superior Court erred in finding that there were sufficient exigent circumstances to support the issuance of a "no-knock" search warrant in this case. This is a mixed question of law and fact which we review de novo. *Rosario v. Quan*, 3 N.M.I. 269, 276 (1992).

## FACTS AND PROCEDURAL BACKGROUND

¶4     On July 20, 1995, Police Detective Roque K. Camacho ("Detective Camacho") executed an Affidavit in Support of a No-Knock Search Warrant. In the affidavit, Detective Camacho stated:

    1. Within the last twelve (12) hours, he had conducted a controlled purchase of a substance later confirmed as ice from Aldan at his residence in Garapan using a confidential reliable informant;
    2. In November 1994, a Search Warrant had been executed at the residence of Aldan in Garapan and marijuana and ice residue were confiscated.
    3. In the past Aldan had stated that the Police would not find anything because he would destroy or get rid of the evidence.

    Based on this information, a "no-knock" search warrant was issued for Aldan's residence in Garapan.

¶5     At approximately 6:30 a.m. on July 20, 1995, nine armed police officers from the Department of Public Safety entered Aldan's residence without knocking or announcing their presence pursuant to the no-knock search warrant. Aldan was found sleeping in his bedroom. The search yielded approximately .74 grams of ice and a loaded .22 caliber rifle. The rifle had been previously registered by Aldan with the Department of Public Safety but the license had expired in April 1995.

¶6     On January 31, 1996, Aldan filed a motion to suppress the rifle and the ice contending that the "no-knock" search warrant was unlawful. He also requested a "Franks hearing"[2] to challenge the truthfulness of the statements made in the affidavit by Detective Camacho. The Superior Court denied both requests.

¶7     Aldan was convicted of illegal possession of a controlled substance. Following the trial, at the June 27, 1996, hearing, the Superior Court found that the .22 caliber rifle required the imposition of the enhanced penalty provision of 6 CMC § 2142(d)(4) since it was an "illegal firearm" under the statute. Pursuant to this subsection, the court sentenced Aldan to five years imprisonment not subject to suspension, probation, or parole. Aldan timely appealed.

## ANALYSIS

¶8     Article I, §3 of the Commonwealth Constitution provides the "right of the people to be secure in their persons, houses, papers and belongings against unreasonable searches and seizure."[3]

    (a) No warrants shall be issued except upon probable cause supported by oath and affirmation and particularly describing the place to be searched and the persons or things to be seized.

N.M.I. Const. art. I, §3 (1994).

¶9     In addition to Article I, §3, the Commonwealth has a right of individual privacy which "shall not be infringed except upon a showing of compelling interest." N.M.I. Const. art. I, §10 (1986). Therefore, the right of the people of the Commonwealth to be free from unreasonable search and seizure is firmly grounded in the Commonwealth Constitution.

¶10     In addition, this Court in *Commonwealth v. Bowie* held that:

---

[1] Appellant's other issues before this Court include:

    3. Whether the Superior Court erred in concluding that the .22 caliber rifle found in Aldan's residence was an "illegal fireman" pursuant to 6 CMC § 2142(d)(4);

    4. Whether the Superior Court erred in ruling that 6 CMC § 2142(d)(4) requires the court to impose a five-year sentence, not subject to suspension, probation, or parole; and

    5. Whether the Superior Court's interpretation of 6 CMC § 2142(d)(4) results in manifest injustice constituting reversible error.

[2] A criminal defendant is entitled to a hearing and should be given the opportunity to attack the search warrant if it is obtained using intentional or reckless false statements in the affidavit. *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674. 57 L. Ed. 2d 667 (1978).

[3] Article I, § 3 is the mirror image of the Fourth Amendment to the United States Constitution.

Physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed. The rule is designed to protect the physical integrity of the home.

3 N.M.I. 462, 469 (1993)(citations omitted).[4]

¶11    The requirement that law enforcement officers give notice prior to forcing entry to execute a warrant serves three purposes: (1) to protect the occupants of the house and law enforcement officers from violence; (2) to protect individual privacy rights; and (3) to protect against the needless destruction of private property. *United States v. Little*, 753 F.2d 1420, 1435 (9th Cir. 1984).

## I. The laws of the Commonwealth do not authorize a "no-knock" search warrant

### A. *Rule 41(c) of the Criminal Rules of Procedure*

¶12    Commonwealth Rules of Criminal Procedure 41(c) provides the mechanisms for the issuance of a search warrant.

> The warrant shall be directed to a policeman. It shall command the police officer to search, within a specified period of time not to exceed ten (10) days, the person, or place named for the property or person specified. The warrant shall be served in the daytime unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime. It shall designate the judge to whom it shall be returned.

Com. R. Civ. P. 41(c)(1).

¶13    The only reference to the execution of the search warrant is the time of day it should be executed - during the daytime. The rule is silent as to "no-knock" search warrants. Therefore, while Com. R. Civ. P. 41(c) provides the procedure for the issuance of search warrants, 6 CMC § 6203 dictates how search warrants should be executed when the place is a building or a ship.

### B. *6 CMC § 6203*

¶14    The statutory basis for the execution of a search warrant in a building or a ship is governed by 6 CMC § 6203 which states in part:

> If a building or ship or any part thereof is

designated as the place to be searched, the police officer executing the warrant may enter without demanding permission if the officer finds the building or ship open. *If the building or ship be closed, the officer shall first demand entrance in a loud voice and state he or she desires to execute a search warrant.* If the doors, gates, or other bars to the entrance be not immediately opened, the officer may force an entrance, by breaking them if necessary . . . . Whenever practicable these demands and statements shall be made in a language generally understood in the locality.

6 CMC § 6203 (emphasis added).

¶15    ■ The language of the statute is clear. It mandates that an officer shall knock, announce his presence, and wait prior to serving the search warrant. Therefore, since there is no statutory authority to issue "no-knock" search warrants in the Commonwealth, the trial judge did not have the authority to issue a no-knock search warrant.

## II. There were insufficient exigent circumstances to force entry without knocking in this case

¶16    Courts interpreting the Fourth Amendment to the United States Constitution have allowed "no knock" searches based upon a showing of exigent circumstances.[5] Exigent circumstances exist when there is a threat of physical violence or where police officers have reason to believe that evidence would likely be destroyed if advance notice were given.[6] Courts determine exigency by looking at the circumstances of each case rather than creating a blanket rule. *Richards* [n. 5 above], 520 U.S. at 394, 117 S.Ct. at 1421.

¶17    A police officer's reasonable belief that announcement might place him or others in physical peril constitutes exigent circumstances. *United States v. Turner,* 926 F.2d 883, 886 (9th Cir. 1991).[7]

¶18    In this case, nine heavily armed police officers simultaneously crashed through two doors of Aldan's home at 6:30 in the morning to execute the search warrant.

---

[5]  *Richards v. Wisconsin,* 520 U.S. 385, 394, 117 S.Ct. 1416, 1421, 137 L.Ed.2d 615 (1997); *Wilson v. Arkansas,* 514 U.S. 927, 934, 115 S. Ct. 1914, 1918, 131 L. Ed. 2d 976 (1995); *Ker v. California,* 374 U.S. 23, 47, 83 S. Ct. 1623, 1636, 10 L. Ed. 2d 726 (1963).

[6]  *Wilson,* 514 U.S. at 936, 115 S. Ct. at 1919; *Richards,* 520 U.S. at 391, 117 S.Ct. at 1420.

---

[4]  *See United States v. Ramirez,* 91 F.3d. 1297, 1300 (9th Cir. 1996); *Los Angeles Police Protective League v. Gates,* 907 F.2d 879, 884 (9th Cir. 1990).

[7]  *See Ramirez, supra,* 91 F.3d at 1301; *United States v. Becker,* 23 F.2d 1537, 1540-41 (9th Cir. 1994); *United States v. McShane,* 462 F.2d 5, 6 (9th Cir. 1972).

Aldan was sleeping when the police entered his bedroom. While a rifle was found in the premises, there were no allegations in the affidavit in support of the application for a search warrant that the police officers knew Aldan had a gun or that he used a gun to facilitate his alleged drug offense or crime.

¶19 The possibility of destruction of evidence exists in every narcotics investigation. *United States v. Moreno*, 701 F.2d 815, 818 (9th Cir. 1983) (citations omitted). In order to justify forced entry without an announcement, there must be some evidence to support the suspicion that contraband will be destroyed. *Id.* In *United States v. Fluker*, the court suggested that such evidence might consist of "sounds of running feet or other suspicious activity" or "knowledge that the search was expected." 543 F.2d 709, 717 (9th Cir. 1976).

¶20 ■ In this case, any attempt to escape by Aldan would have been futile considering the presence of nine armed police officers and the fact that Aldan had been roused from his sleep by the officers' intrusion. There was no suggestion that the search was expected. Therefore, the mere allegation that Aldan stated in the past that he would destroy evidence, without any corroborating facts, and without more specific inferences of exigency, did not justify the officers' failure to comply with 6 CMC § 6203.

## CONCLUSION

¶21 For the reasons set forth above, we hereby **REVERSE** the judgment of the Superior Court.[8]

VILLAGOMEZ, Justice, dissenting:

¶22 I will affirm as to issues number 1, 2, and 3. I will reverse as to issue number 4.

### A. Whether the CNMI Constitution allows a "No Knock" Search Warrant.

¶23 Aldan acknowledges on page 12 of its opening brief that the United States courts interpreting the Fourth Amendment to the U.S. Constitution have allowed "no knock" searches based upon a showing of exigent circumstances. *See, Ker v. California*, 374 U.S. 23, 10 Led. 2d 726, 83 S.Ct. 1623 (1963). Aldan, however, urges this Court not to adopt such a principle because, unlike the U.S. Constitution, the CNMI Constitution expressly provides for the protection of individual privacy.[9]

¶24 Aldan argues that in balancing the defendant's right to privacy against the public's right to protect and promote its health and safety, the scale must tip in favor of defendant. Therefore, the Superior Court erred when it ruled that a "no knock" search warrant may be issued under exigent circumstances. I find no error.

¶25 In adopting Section 10 of Article I of the Constitution, the framers in the First Constitutional Convention intended to broadly define the right of privacy and to prohibit the intrusion or invasion of such right by either the government or other individuals. *See* ANALYSIS OF THE CONSTITUTION, p. 24-25 (Dec. 6, 1976). At the same time, the framers expressly stated that "the right of individual privacy guaranteed by this section is not absolute." ANALYSIS OF THE CONSTITUTION at 25 (Dec. 6, 1976). The Convention recognized the Commonwealth's "interest in protecting the health, safety and welfare of the community." *Id.*

¶26 In order for the Commonwealth government to legally intrude upon this constitutionally protected right to privacy, it must show that there is a "public purpose" which advances the health, safety or welfare of the community. The term "public purpose" includes the need to enforce laws. *Id.* at 26. The government must show that the intrusion is compelling, that is, as a practical matter, the public purpose could not have been accomplished in a less intrusive manner.

¶27 In the case at hand, the Superior Court stated: "Without the use of a 'no knock' Search Warrant, most drug cases will not be successfully prosecuted and the gathering of evidence will be even more difficult." *CNMI v. Aldan*, Cr. Case No. 95-0158, Decision/Order (Feb. 15, 1996). Enforcement of the Commonwealth Controlled Substance Act is an important public purpose because it enhances the protection of the health, safety and welfare of our community.

¶28 I will conclude that in balancing the individual's constitutional right to privacy with the Commonwealth Government's responsibility to enforce its criminal laws, our Constitution allows a "no knock" search warrant upon a showing of exigent circumstances. Such a search would not be unreasonable under Art. I, § 3 of the CNMI Constitution.[10]

---

[9] Art. I, § 10 of the CNMI Constitution provides: "The right of individual privacy shall not be infringed except upon a showing of compelling [Commonwealth] interest."

[10] The Commonwealth Constitution Article I, section 3 provides:

**Search and Seizure.** The right of the people to be secure

---

[8] Although we are not addressing the issue of whether the Superior Court erred in ruling that 6 CMC § 2142(d)(4) requires the court to impose a five-year sentence, not subject to suspension, probation, or parole, we agree with the analysis of the dissent on this issue.

## B. Whether Exigent Circumstances Exist in this Case.

¶29  The Superior Court found "special circumstances" supporting the issuance of the "no knock" search warrant. I interpret the use of the term "special" to mean the same as "exigent." Aldan contends that there is insufficient exigent circumstances to justify the issuance of the "no knock" search warrant. Therefore, he argues that the Superior Court committed a reversible error. I find no error.

¶30  It is well settled in U.S. jurisprudence that the imminent destruction of vital evidence may constitute exigent circumstances. *Ker*, *supra* at 742, n.11. The main reason that the *Ker* court found the unannounced entry of the police officers to be reasonable under the Fourth and Fourteenth Amendments was that "the officers[] [believed] that Ker was in possession of narcotics, which could be quickly and easily destroyed." *Id.* The Court stated: "Suspects have no constitutional right to destroy or dispose of evidence." *Id.* In *Ker*, the officers observed the defendant transacting with a known marijuana dealer, but did not see any substance passing between them. The officers started to follow the defendant but then lost track of him. One of the officers had information that the defendant was selling marijuana from his apartment. They proceeded to defendant's apartment and entered without knocking. They found the defendant and some marijuana. The district court found exigent circumstances existed justifying the unannounced entry. The U.S. Supreme Court affirmed.

¶31  Here, the Affidavit provided information that Aldan would destroy any evidence of controlled substance if he knew that the police officers were approaching. In addition, only 12 hours beforehand, Aldan had sold methamphetamine at his house to a police informant, and an earlier search of Aldan's house had produced marijuana and methamphetamine. Under these circumstances, the

---

in their persons, houses, papers and belongings against unreasonable searches and seizures shall not be violated.

(a) No warrants shall issue except upon probable cause supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized.

(b) No wiretapping, electronic eavesdropping or other comparable means of surveillance shall be used except pursuant to a warrant.

(c) A person adversely affected by an illegal search or seizure has a cause of action against the government within limits provided by law.

N.M.I. Const. art. 1 § 3 (1978).

Superior Court correctly found that exigent circumstances existed justifying the issuance of the "no knock" search warrant.

## C. Whether the .22 Caliber Rifle was an "Illegal Firearm" under 6 CMC § 2142(d)(4).

¶32  6 CMC § 2142(d)(4) provides:

> Any person possessing any quantity of a controlled substance and found to be in possession of an illegal firearm shall be sentenced to a mandatory five-year term of imprisonment not subject to suspension, probation or parole.

6 CMC § 2142(d)(4).

Aldan was found to be in possession of a .22 caliber rifle. The identification card issued to Aldan for such rifle had expired three months earlier.

¶33  Aldan contends that the rifle was not an "illegal rifle" because (1) it is a rifle that can be legally registered; (2) it was previously registered; (3) it was not used in facilitating his possession of the illegal drug; (4) the statute is ambiguous as to the meaning of "illegal" and "possession;" and (5) it is unclear when the rifle is to be surrendered to the police upon expiration of the holder's identification card. I find no error.

¶34  A firearm can be possessed either legally or illegally. Our laws provide: "No person may . . . possess any firearm . . . unless the person holds an identification card issued pursuant to this chapter." 6 CMC § 2204(a). For Aldan to legally possess the .22 caliber rifle, he must hold a valid and unexpired identification card. His failure to timely renew his identification card rendered his possession of the rifle illegal. Therefore, the Superior Court did not err in concluding that Aldan possessed an illegal firearm at the time of the search. The fact that the rifle can be registered, was previously registered, was not used in connection with Aldan's possession of methamphetamine, and could be surrendered to the police, did not make it a "legal firearm." Aldan "possessed" the gun because it was previously registered in his name and was found in his house.

## D. Whether 6 CMC § 2142(d)(4) Requires the Court to Impose a Five-year Sentence, Not Subject to Suspension, Probation or Parole.

¶35  Aldan contends that because the opening paragraph of 6 CMC § 2142(d) uses the word "may," it is uncertain whether the trial court is *required* to sentence the defendant under subsection 2142(d)(4). Therefore, the statute is ambiguous and, under the rule of lenity, this

ambiguity must be resolved in favor of Aldan. Since the Superior Court felt that it was required to and did sentence Aldan under subsection 2142(d)(4), the ambiguity was resolved against Aldan. The opening paragraph of subsection 2142(d) states: "Any person who violates subsection (a) of this section with respect to methamphetamine hydrochloride, cocaine, or heroin *may* be penalized, *in addition to the penalties described in subsection (b)* of this section as follows:" (emphasis added).

¶36 I have examined section 2142 in its entirety and find no ambiguity. Subsection 2142(a) makes it unlawful to knowingly possess a controlled substance without legal authority. Subsection 2142(b) provides the maximum penalty for the illegal possession of controlled substance, except for marijuana. Subsection 2142(c) provides various penalties for illegal possession of different amounts of marijuana. Subsection 2142(d) provides additional and minimum penalties for the illegal possession of methamphetamine, cocaine, or heroin only. Subsection 2142(d)(1)(2) and (3) provide various minimum penalties for the illegal possession of different amounts of methamphetamine, cocaine and heroin. Subsection 2142(d)(4) provides for a minimum penalty if the person, in possession of illegal methamphetamine, cocaine or heroin, is also in possession of an illegal firearm. Subsection 2142(d)(5) provides for a minimum penalty if the person in possession of illegal methamphetamine, cocaine or heroin, discharges any firearm in connection with his/her possession of a controlled substance or his/her apprehension for such possession. This minimum sentence is to run consecutively with any sentence imposed under subsection 2142(b).

¶37 Read in their entirety, the plain language of subsections 2142(a) through (d) means that a defendant who has been convicted under subsection 2142(a) shall be sentenced under subsection 2142(b). However, if the defendant's conviction is for possession of methamphetamine, cocaine, or heroin, then in addition to the penalties imposed under subsection (b), the court *may* also impose the applicable penalties under subsection 2142(d).

¶38 Aldan illegally possessed methamphetamine and a rifle at the same time. Therefore, in addition to being sentenced under subsection 2142(b), he may also be sentenced under 2142(d)(4), at the court's discretion.

¶39 Here the Superior Court chose to add the minimum penalties under subsection2142(d)(4). Aldan asserts that the court did that because it felt that it was *required* to do so. If that assertion is correct, then the court was in error. The court may sentence Aldan up to five years imprisonment not subject to suspension, parole or probation and $2,000 fine under subsection 2142(b); *and* may, in its discretion, impose the minimum penalties under subsection 2142(d)(4).

¶40 For the above reasons, I will **AFFIRM** as to Issues Number 1, 2, and 3. I will **REVERSE** as to Issue Number 4 and **REMAND** to the Superior Court to redetermine whether to sentence Aldan under subsection 2142(b) only, or to add the minimum penalties under subsection 2142(d)(4). Under the facts of this case the imposition of the minimum penalties under subsection 2142(d)(4) would be within the statutory and constitutional power of the Superior Court.