OPINION
{¶ 1} Timothy Blue appeals from his conviction in the Montgomery County Common Pleas Court of attempted possession of crack cocaine. Blue entered a no contest plea to the charge after his motion to suppress the cocaine had been overruled by the trial court.
 {¶ 2} The facts underlying the appeal are set out in the State's brief and are not in dispute.
 {¶ 3} On January 15, 2003, at 10:10 p.m., a search warrant was executed at 414 North Williams Street in the City of Dayton. The warrant authorized a search of the residence for evidence of drug trafficking and drug possession, including drugs, paraphernalia and weapons. Robert Stroud, a known drug dealer, was specially named in the warrant. Just before executing the warrant, a controlled buy was set up and successfully completed at the residence. The officers, consisting of Officer Kevin Phillips and about eight others, in uniform, approached the residence. Officer Phillips was assigned to the rear entrance and had the duties to knock and announce. Officer Phillips explained that, generally, the procedure was to wait until all officers were in position prior to knocking and announcing their presence due to officer safety.
 {¶ 4} However, in this case, when the officers were about 15-20 feet away from the residence, a woman from inside the home yelled, "The police are coming!" When Officer Phillips got to 6-8 feet away, he observed a male look out the back window and then disappear. Officer Phillips then heard the bullhorn announce, "Police, search warrant, open the door!" Approximately five seconds had elapsed from the time of hearing the woman scream and the time the officers approached the door. Officer Phillips made a decision to abort the knock and announce police and immediately breach the door. Officer Phillips explained that, under these circumstances, the persons inside were already aware of the officers' presence and purpose and they were possibly gaining access to weapons or destroying the evidence.
 {¶ 5} The search warrant was admitted as Joint Exhibit I. In the affidavit, Detective Michael August stated that on or about December 1, 2002, the Street Crimes Bureau began receiving complaints of drug activity occurring day and night at the Williams Street address. August stated a confidential informant purchased crack cocaine on December 26, 2002 and January 9, 2003. August also said police observed subjects coming and going from the residence. The subjects' visits were brief and were consistent with the activity at the house being a "drug house."
 {¶ 6} In a single assignment, Blue argues that the trial court erred in not sustaining his suppression motion because the police did not "knock and announce" before entering the premises searched. The State did not contest Blue's "standing" to
 {¶ 7} raise a constitutional objection to the search presumably because Blue was an overnight guest. (See Tr. 30) andMinnesota v. Olson (1990), 495 U.S. 91.
 {¶ 8} In overruling Blue's motion, the trial court found there were sufficient exigent circumstances to permit the police to dispense with the knock and announce requirements of R.C.2935.12.
 {¶ 9} Blue argues that the State failed to demonstrate that exigent circumstances existed so the police could dispense with the statutory requirement of knocking and announcing. Blue argues that exigent circumstances do not exist merely because an occupant of the house searched knew the police were present outside before the police entered. Also he notes that the police did not know whether Stroud was a violent person or was in possession of firearms at the home searched.
 {¶ 10} The State argues that exigent circumstances existed at the time of the search because the occupants were alerted as to the presence of the police, the police did announce their presence before entering, a recent controlled buy had just occurred at the residence and it was 10:10 p.m. when persons are unlikely to be in bed. The State notes that Officer Phillips was concerned the suspected drugs would be flushed down a toilet or drain or the occupants could barricade the door and get to weapons. (Tr. 13-17). Officer Phillips noted that he had executed some 1500 warrants and weapons had been found in 80% of the searches.
 {¶ 11} In Wilson v. Arkansas (1995), 514 U.S. 927, the United States Supreme Court held that the Fourteenth Amendment incorporates the common law requirement that before police officers may attempt forcible entry into a residence, they must first knock on the door and announce their identity and purpose. The common law "knock and announce" requirement has also been codified in R.C. 2935.12(A), which provides in pertinent part that "* * * when executing a search warrant, the peace officer * * * executing the warrant may break down an outer or inner door or window of a dwelling house or other building if, after notice of his intention to * * * execute the warrant, he is refused admittance * * *."
 {¶ 12} Nevertheless, the knock and announce requirement is not absolute, however, and may be dispensed with when law enforcement officers are confronted by exigent circumstances: "If it appears that the evidence sought can and will be destroyed on short notice, or that compliance could place the officers in peril of great bodily harm, then the officers may deviate from strict compliance with R.C. 2935.12(A)." State v. Roper (1985),27 Ohio App.3d 212, 213. "In order to justify a `no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. * * * This showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged." Richards v.Wisconsin (1997), 520 U.S. 385, 394-395.
 {¶ 13} Recently the United States Supreme Court held that an interval of 15-20 seconds from the officers' knock and announcement of a search warrant until forced entry was reasonable, given the exigency of the possible destruction of evidence. U.S. v. Banks, 540 U.S. 124 S.Ct. 521,157 L.Ed.2d 343 (2003). Banks was suspected of selling cocaine at his two bedroom apartment. Police arrived in the afternoon with the warrant, rapped at the back door and called out "police search warrant." When no one responded after 15-20 seconds, the officers broke open the door with a battering ram. Banks was in the shower and stated he heard nothing until the crash of the door. Police recovered weapons, crack cocaine, and other evidence of drug dealing.
 {¶ 14} In upholding the search, Justice Souter wrote on behalf of a unanimous court:
 {¶ 15} "The Fourth Amendment says nothing specific about formalities in exercising a warrant's authorization, speaking to the manner of searching as well as to the legitimacy of searching at all simply in terms of the right to be `secure . . . against unreasonable searches and seizures.' Although the notion of reasonable execution must therefore be fleshed out, we have done that case by case, largely avoiding categories and protocols for searches. Instead, we have treated reasonableness as a function of the facts of cases so various that no template is likely to produce sounder results than examining the totality of circumstances in a given case; it is too hard to invent categories without giving short shrift to details that turn out to be important in a given instance, and without inflating marginal ones. See, e.g., Ohio v. Robinette, 519 U.S. 33, 39,117 S.Ct. 417, 136 L.Ed.2d 347 (1996).
 {¶ 16} "* * *
 {¶ 17} "In Wilson v. Arkansas, 514 U.S. 927,115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), we held that the common law knock-and-announce principle is one focus of the reasonableness enquiry; and we subsequently decided that although the standard generally requires the police to announce their intent to search before entering closed premises, the obligation gives way when officers `have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or . . . would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.' Richards v. Wisconsin,520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). When a warrant applicant gives reasonable grounds to expect futility or to suspect that one or another such exigency already exists or will arise instantly upon knocking, a magistrate judge is acting within the Constitution to authorize a `no-knock' entry. Andeven when executing a warrant silent about that, if circumstancessupport a reasonable suspicion of exigency when the officersarrive at the door, they may go straight in. Id., at 394, 396, n. 7, 117 S.Ct. 1416.
 {¶ 18} "* * *
 {¶ 19} "And the argument that 15 to 20 seconds was too short for Banks to have come to the door ignores the very risk that justified prompt entry. True, if the officers were to justify their timing here by claiming that Banks's failure to admit them fairly suggested a refusal to let them in, Banks could at least argue that no such suspicion can arise until an occupant has had time to get to the door, a time that will vary with the size of the establishment, perhaps five seconds to open a motel room door, or several minutes to move through a townhouse. In thiscase, however, the police claim exigent need to enter, and thecrucial fact in examining their actions is not time to reach thedoor but the particular exigency claimed. On the record here,what matters is the opportunity to get rid of cocaine, which aprudent dealer will keep near a commode or kitchen sink. Thesignificant circumstances include the arrival of the policeduring the day, when anyone inside would probably have been upand around, and the sufficiency of 15 to 20 seconds for gettingto the bathroom or the kitchen to start flushing cocaine down thedrain. That is, when circumstances are exigent because a pusher may be near the point of putting his drugs beyond reach, it is imminent disposal, not travel time to the entrance, that governs when the police may reasonably enter; since the bathroom and kitchen are usually in the interior of a dwelling, not the front hall, there is no reason generally to peg the travel time to thelocation of the door, and no reliable basis for giving theproprietor of a mansion a longer wait than the resident of abungalow, or an apartment like Banks's. And 15 to 20 seconds does not seem an unrealistic guess about the time someone would need to get in a position to rid his quarters of cocaine." (Emphasis added.)
 {¶ 20} Officer Phillips testified he dispensed with knocking and announcing after the woman yelled the warning to the occupants of the residence and the bullhorn sounded their presence outside the residence because he was concerned for the safety of the police officers executing the warrant and because the occupants were alerted and were in a position to dispose of the crack cocaine before they could gain entry and prevent the destruction of the cocaine. (Tr. 14).
 {¶ 21} Justice Souter noted in Banks that police act reasonably when they go "straight in" a residence when they can articulate a reasonable suspicion of exigent circumstances that notice of their presence would be futile or would invite grave danger to the police officers or risk imminent destruction of the evidence sought in the warrant. Officer Phillips explained to the trial court why he believed exigent circumstances existed to dispense with the normal knock and announcement requirements. The trial court properly overruled the defendant's suppression motion. The assignment of error must be overruled.
 {¶ 22} The judgment of the trial court is affirmed.
Fain, P.J., and Wolff, J., concur.