DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of conviction and sentence entered by the Huron County Court of Common Pleas after defendant-appellant, Derrick Winfield, entered pleas of no contest to one count of possession of drugs and four counts of trafficking in drugs. Winfield entered the pleas following the trial court's denial of his motion to suppress, which he now challenges on appeal.
 {¶ 2} On June 4, 2004, appellant was indicted and charged with one count of possession of drugs (crack cocaine) in violation of R.C. 2925.11(A) and (C)(4)(d), a second degree felony; three counts of trafficking in drugs (crack cocaine) in the vicinity of a juvenile in violation of R.C. 2925.03(A)(1) and (C)(4)(b), all fourth degree felonies; and one count of trafficking in drugs (crack cocaine) in the vicinity of a juvenile when the drug involved equals or exceeds ten grams but is less than 25 grams, in violation of R.C. 2925.03(A)(2) and (C)(4)(e), a felony of the first degree. The charges were the result of a six month long investigation into possible drug trafficking in the Willard, Ohio, area allegedly organized by Tysean Winfield. Based on information learned in that investigation, Captain Robert McLaughlin of the Huron County Sheriff's Department obtained a warrant to search 3233 Austin Drive, Apt. No. 3, Willard, Ohio, and seize cocaine or any other drug of abuse, related paraphernalia, and documentary evidence of drug transactions.
 {¶ 3} That warrant was sought and obtained on the afternoon of May 18, 2004, and was based on the following information about which McLaughlin attested in an affidavit requesting the search warrant.
 {¶ 4} During the approximately six months preceding the request for the warrant, the Willard Police Department and Huron County Sheriff's Office conducted an investigation involving an organization of approximately four males who were bringing cocaine into Huron County from Detroit, Michigan. The cocaine was then converted into crack cocaine rocks and sold to Willard area drug users. The investigation revealed that Tysean Winfield ran the organization and that appellant Derrick Winfield and Cartier Jante Johnson were involved.
 {¶ 5} On May 16, 2004, a confidential informant ("CI") purchased crack cocaine rocks from Cartier Johnson at 3233 Austin Drive, Apt. No. 3, in Willard. McLaughlin attested that the CI was reliable because the CI had purchased drugs from drug traffickers, including Cartier Johnson, in the recent past and had provided detailed information regarding other drug traffickers in the Willard area.
 {¶ 6} On May 17, 2004, a second CI, used by Detective Sergeant Rick Sexton, purchased crack cocaine from Cartier Johnson at the same Austin Drive apartment. McLaughlin attested that this CI was reliable because this CI had provided information to McLaughlin and Sexton which was corroborated by known information which had been gathered by McLaughlin, the CI had made statements against the CI's own interest by providing information about crimes which involved the CI, and the CI purchased the above listed crack cocaine while wearing an audio device. This CI informed McLaughlin that appellant and Cartier Johnson had a large bag of crack cocaine in their possession during this purchase.
 {¶ 7} McLaughlin further attested that on May 15, 2004, officers executed a drug search at 518 West Maple Street, Willard. During that search, Cartier Johnson and appellant were present but escaped from the search team. McLaughlin asserted that one of those individuals was in possession of a handgun which was then hidden. McLaughlin further asserted that Johnson and appellant were still attempting to find that weapon. He did not, however, state how he knew this information.
 {¶ 8} Finally, McLaughlin requested permission to execute the search warrant at nighttime along with a waiver of the statutory prohibition on nonconsensual entry "to ensure the element of surprise is not compromised which could have an adverse effect on officers' safety and the destruction of evidence."
 {¶ 9} In approving the request and issuing the warrant, the issuing magistrate only authorized the request for a nighttime search. The magistrate did not approve McLaughlin's request for a nonconsensual, i.e. "no-knock," entry. McLaughlin, however, mistakenly believed that the warrant did authorize a no-knock entry.
 {¶ 10} On the evening of May 18, 2004, Captain McLaughlin and officers of the Huron County Sheriff's Department determined that the Special Response Team ("SRT") would be used to gain entry to the Austin Drive apartment. Officer Michael Martz of the Huron County Sheriff's Office led the SRT and testified at the suppression hearing below that once the decision has been made to use the SRT to execute a warrant, the decision has already been made to breach the door immediately and forego the knock and announce requirement. The standard practice of the SRT was to line up approximately eight officers in a stack formation outside of the premises to be searched, knock on the door, state "Sheriff's Department, search warrant," and then immediately break down the door with a battering ram, with no more than two or three seconds between the time of the knock and announce and the door being breached. This practice does not give the inhabitants time to answer the door or dispose of evidence.
 {¶ 11} After the decision was made to use the SRT, but before the search warrant was executed, a final controlled buy was made at the Austin Drive apartment by a CI. The CI reported that while in the apartment the CI observed a gun and saw the occupants using LSD. McLaughlin passed this information on to the SRT. Approximately 10 to 15 minutes later, the SRT executed the search warrant consistent with their standard practice. The evidence obtained from that search led to the indictment of appellant. No weapons or LSD were found during that search.
 {¶ 12} Initially, appellant pled not guilty to all of the offenses. He then filed a motion to suppress the evidence obtained as a result of the search of the Austin Drive apartment. Appellant asserted that the search was unreasonable because it violated the "knock and announce" requirement essential to a lawful search of a private home under the Fourth Amendment to the United States Constitution, and did not comply with the requirements of R.C. 2935.12. The case proceeded to a hearing on the motion to suppress at which Sergeant Martz and Captain McLaughlin testified. In addition, appellant and the state stipulated that Sergeant Sexton of the Willard Police Department would have testified as follows:
 {¶ 13} "That in the evening hours of May 18, 2004, just prior to the Special Response Team (SRT) preparing to make entry into 3233 Austin Drive, Apartment 3, Willard, Ohio, pursuant to a search warrant, a controlled buy was completed by a confidential informant (CI) who had proved to be reliable in the past. The controlled buy was recorded and immediately after the sale of crack cocaine, Sergeant Sexton quickly debriefed the CI. The CI reported the circumstances regarding the sale and the recording was shut off and said information was relayed to Captain McLaughlin of the Huron County Sheriff's Department, who was present, but inside a vehicle. While Captain McLaughlin was passing along the information to the SRT, the CI kept talking to Sgt. Sexton and mentioned the fact that a gun or a weapon was present and the occupants were using LSD. Sgt. Sexton immediately informed Captain McLaughlin of this additional information and it was passed along to the SRT, but said information is not on the debriefing tape due to said recording previously having been turned off."
 {¶ 14} On August 18, 2004, the court issued a judgment entry that included findings of fact and conclusions of law. In addition to the facts as set forth above, the court expressly found that Captain McLaughlin's testimony that LSD causes people to have heightened states of sensibility, suffer from paranoia and hallucinate was credible because McLaughlin was an experienced drug enforcement officer with more than 20 years experience in the field. The court also noted that the police had received reports of an altercation at 3233 Austin Drive, Apartment No. 3, several days before the search, in which they believed that someone had been pistol whipped. The court then concluded that although the officers were not authorized by the warrant to execute a no-knock entrance, exigent circumstances existed at the time the officers entered the apartment to justify a no-knock entrance. The court specifically based this conclusion on the fact that the police had very current information that the occupants of the apartment had weapons and were under the influence of LSD and that the report of weapons was consistent with other information the officers had previously obtained through police intelligence. Accordingly, the court denied appellant's motion to suppress. Upon the denial of his motion to suppress, appellant changed his plea from not guilty to no contest and was subsequently found guilty and sentenced.
 {¶ 15} Appellant now challenges the trial court's denial of his motion to suppress through the following assignment of error:
 {¶ 16} "The trial court erred to the prejudice of the Defendant-Appellant when it overruled his motion to suppress evidence, where such evidence was obtained through an unreasonable `no-knock' search of the private home in which he was a guest, in violation of his rights under the U.S. and Ohio Constitutions."
 {¶ 17} Appellate review of the denial of a motion to suppress presents a mixed question of law and fact. In a motion to suppress, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. State v. Smith (1997),80 Ohio St.3d 89, 105. Accordingly, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Rhude (1993),91 Ohio App.3d 623, 626; State v. Guysinger (1993), 86 Ohio App.3d 592,594. Accepting those facts as true, this court must independently determine as a matter of law, without deference to the trial court's conclusions, whether they meet the applicable legal standard. State v. Klein (1991), 73 Ohio App.3d 486, 488.
 {¶ 18} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect citizens from unreasonable searches and seizures. Searches and seizures conducted outside of the judicial process, without a warrant based on probable cause, are per se unreasonable, subject to several specific established exceptions. Schneckloth v.Bustamonte (1973), 412 U.S. 218, 219. Included in theFourth Amendment is "the common law requirement that police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry." Richardsv. Wisconsin (1997), 520 U.S. 385, 387, citing Wilson v.Arkansas (1995), 514 U.S. 927. In Ohio, that doctrine is codified at R.C. 2935.12, which reads at relevant part:
 {¶ 19} "(A) When making an arrest or executing an arrest warrant * * * or when executing a search warrant, the peace officer, law enforcement officer, or other authorized individual making the arrest or executing the warrant or summons may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to make the arrest or to execute the warrant or summons, he is refused admittance, but the law enforcement officer or other authorized individual executing a search warrant shall not enter a house or building not described in the warrant."
 {¶ 20} Accordingly, a police officer must be either patently or constructively refused entry into a dwelling before forcing entry. State v. Roper (1985), 27 Ohio App.3d 212, 213. Where officers either fail to knock at all before crossing the threshold or knock and announce but fail to give the inhabitants reasonable time to answer the door before entering, the search is unreasonable. See generally United States v. Banks (2003),540 U.S. 31. The United States Supreme Court, however, has held that where police officers "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence," the officers may proceed with a no-knock entry. Richards v. Wisconsin, supra at 394. The fact that the issuing magistrate did not authorize a no-knock entry is irrelevant to the question of whether the officers' entry into a dwelling was reasonable. Id. at 395. Rather, the reasonableness of the officers' decision to enter a dwelling without knocking and announcing must be evaluated as of the time that they entered the dwelling. Id. Accordingly, where a search warrant does not authorize a no-knock entry, but the circumstances support a reasonable suspicion that knocking and announcing their presence would be dangerous or futile "when the officers arrive at the door, they may go straight in." UnitedStates v. Banks, supra at 36-37, citing Richards v. Wisconsin,
supra at 394, 396.
 {¶ 21} The record reveals that although the warrant did not authorize a no-knock entry, the officers involved believed that it did and utilized the SRT to execute the warrant. Absent authorization for such an entry by a magistrate, this is clearly violative of the statutory prohibition on no-knock entries, R.C.2935.12, and the Fourth Amendment's prohibition on unreasonable searches. The state, however, argues that the officers' entry into the home was justified by exigent circumstances.
 {¶ 22} The record reveals that shortly before the SRT entered the dwelling, a final controlled buy of crack cocaine was made in the apartment by the CI. The CI then reported back that he observed a gun in the apartment and saw the occupants using LSD. Because LSD is a hallucinogenic drug and the inhabitants were known to carry weapons, the state asserts that the officers were at great danger and were therefore justified in dispensing with the knock and announce requirement. At the suppression hearing below, Sergeant Martz testified that prior to executing the warrant, he and the SRT met at a rendezvous point in Willard where Captain McLaughlin gave them a final briefing by radio. It was at this briefing that he and the SRT were informed that the individuals in the apartment may be armed and under the influence of LSD. Captain McLaughlin testified that in his many years of investigating drug trafficking, he has learned that LSD causes auditory and visual hallucinations, heightened awareness, and paranoia. The trial court found that Captain McLaughlin's testimony regarding the effects of LSD was credible. The court further found information that the occupants of the apartment were armed and on LSD combined with previously known information that the occupants had pistol whipped somebody, justified the officers in dispensing with the knock and announce requirement.
 {¶ 23} We find this case to be particularly troublesome. We do not question the trial court's finding that the combination of LSD and weapons in the hands of drug dealers gives officers sufficient cause to fear for their safety upon the proper execution of a search warrant. In this case, however, the exigent circumstances claimed by the state did not change the officers' course of action. That is, the officers did not act on the exigent circumstances nor did they dispense with the knock and announce requirement on the basis of the exigent circumstances. Rather, the officers continued on the course that they had already chosen — to execute what they believed was a no-knock search warrant. In particular, we note that Officer Martz never testified that the new information (that the occupants were armed and on LSD), caused him or his team to fear for their safety or to alter their plan of executing the search warrant. Rather, he testified that other than the usual dangers involved in this sort of entry, this was not an emergency situation. He also testified that in executing the search warrant, the SRT simply followed their standard procedure, and that nothing happened after he first knocked on the door which would cause the SRT to alter their plan.
 {¶ 24} Under the circumstances of this case, we are compelled to find that the trial court erred in denying appellant's motion to suppress. Because the officers executing the search warrant did not dispense with the knock and announce requirement on the basis of exigent circumstances, their entrance into the apartment was in violation of R.C. 2935.12 and the Fourth Amendment to the United States Constitution. The sole assignment of error is therefore well-taken.
 {¶ 25} On consideration whereof, the court finds that appellant was prejudiced and prevented from having a fair trial and the judgment of the Huron County Court of Common Pleas is reversed. Appellant's conviction and sentence are vacated and this case is remanded to the trial court for further proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Huron County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Singer, P.J., Skow, J., Concur.