EASON V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NOS. 2-05-365-CR 

       2-05-366-CR

JAMES CARROLL EASON A/K/A APPELLANT

JAMES CARROLL EASON, JR. 

V.

THE STATE OF TEXAS STATE

------------

FROM THE 415TH DISTRICT COURT OF PARKER COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant James Carroll Eason 
appeals his convictions for possession, on two separate occasions, of more than four but less than 200 grams of methamphetamine.
(footnote: 2)  After Eason entered a plea of nolo contendere in both cause numbers, the trial court entered a judgment of guilty and sentenced him to two years’ and five years’ confinement, respectively. In three points, Eason contends that the trial court erred by denying his motions to suppress evidence. We will affirm. 

II.  Standard of Review

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).  But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.  
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652-53.

When reviewing a trial court’s ruling on a mixed question of law and fact, the court of appeals may review de novo the trial court’s application of the law of search and seizure to the facts of the case.  
Estrada
, 154 S.W.3d at 607.  When there are no explicit findings of historical fact, the evidence must be viewed in the light most favorable to the trial court’s ruling.  
Id
.

We must uphold the trial court’s ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.  
Armendariz v. State
, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), 
cert. denied
, 541 U.S. 974 (2004); 
Ross
, 32 S.W.3d at 856; 
Romero
, 800 S.W.2d at 543.  

III.  Cause No. 14819

On September 21, 2001, Deputy Tony Bilbay and three other investigators went to Eason’s property to investigate a tip that Eason was distributing methamphetamine from his home.  The officers, who were not acting under the authority of a search warrant or with probable cause, conducted a “knock-and-talk” procedure in which they identified themselves as peace officers, explained the tip that they had received, and asked for consent to search Eason’s residence.  Deputy Bilbay explained to Eason that if he gave his consent to search the residence and the officers found only a “user amount” of methamphetamine, they would not issue an arrest warrant until a later date.  Eason told the officers that he used, but did not sell, methamphetamine, and when asked if he had any methamphetamine on him, Eason took out of his pocket three bags containing white powder that appeared to be methamphetamine.  Deputy Bilbay then obtained Eason’s consent to search his residence, but the deputy stopped the search because it appeared to him that Eason wished to withdraw his consent.  After Eason declined to give consent for the officers to search his barn, the officers left his property.  Several months later, Eason was arrested.  

In a single point, Eason contends that the trial court erred by denying his motion to suppress evidence because the officers obtained evidence in violation of the laws of this State and that, consequently, the evidence should have been suppressed under article 38.23 of the Texas Code of Criminal Procedure
.
(footnote: 3) Specifically, Eason contends that the officers violated the criminal trespass law by entering his property for the “knock-and-talk” despite the posted “No Trespassing” signs.  

Article 38.23 provides that no evidence obtained in violation of state or federal laws shall be admitted as evidence against the accused in any criminal case. 
Id
.  A person commits a criminal trespass if he enters or remains on property of another without effective consent and he had notice that the entry was forbidden or received notice to depart but failed to do so. 
 
Tex. Penal Code Ann.
 § 30.05(a) (Vernon Supp. 2005).  A sign posted on the property that is reasonably likely to come to the attention of intruders indicating that entry is forbidden constitutes notice.  
Id.
 § 30.05(b)(C).  

Here, at the suppression hearing, the trial court heard conflicting testimony about whether “No Trespassing” signs were posted on Eason’s property on September 21, 2001.  Eason introduced photographs showing a “No Trespassing” sign posted on one side of the gate to his property and a “No Trespassing” sign posted on a tree just inside the gate.
(footnote: 4)  Eason testified that those signs had been there since his mother first purchased the property five or six years earlier and that they were posted the day the officers entered his property.  Eason’s mother and stepfather, who also lived on the property, and two of Eason’s friends testified that the signs had always been posted on the property.  On the other hand, Deputy Bilbay and an investigator who accompanied him to Eason’s property both testified that they did not recall any “No Trespassing” signs on Eason’s property; further, Deputy Bilbay testified that had he noticed any signs, he would not have entered Eason’s property. 

 The trial court’s determination of this issue involved the evaluation of the credibility of the witnesses.  
See Nilson v. State
, 106 S.W.3d 869, 875 (Tex. App.—Dallas 2003, no pet.).  By denying Eason’s motion, the court resolved the conflict in favor of the State and implicitly found that “No Trespassing” signs were not posted on Eason’s property when the officers entered the property.  The testimony of Deputy Bilbay and the investigator supports the trial court’s implied finding, and therefore, we must defer to the trial court’s resolution of that factual determination.  
See Johnson
, 68 S.W.3d at 652-53; 
Guzman
, 955 S.W.2d at 89
; Ballman
, 157 S.W.3d at 68.  Accordingly, viewing the evidence in a light most favorable to the trial court’s ruling and assuming that the court made implicit findings of fact in support of its ruling based on the evidence, we hold that the court, as the sole trier of fact, could have reasonably found that the officers did not have notice that entry onto Eason’s property was forbidden.  
See
 
Estrada
, 154 S.W.3d at 607. 

Eason also contends that the officers committed criminal trespass by not leaving when Eason requested that they leave.  
See 
Tex. Penal Code Ann.
 § 30.05(b)(2)(A) (defining notice to include oral or written communication by the owner).  Eason testified that when the officers first began talking to him, he asked them if they “couldn’t leave and just forget all this happened” and that Deputy Bilbay responded, “No, we can’t do that.”  Eason testified that he never “flat out” told the officers to leave.  Viewing this evidence, as we must, in the light most favorable to the trial court’s ruling, we conclude that this statement can be viewed as merely a request to drop the case, rather than a request that the officers leave the property.
(footnote: 5)  
See id.
 
 
 Based on our disposition of Eason’s complaints, we need not determine if a violation of the criminal trespass statute invokes article 38.23; we hold that the trial court did not err by denying Eason’s motion to suppress.
(footnote: 6)  
See Johnson
, 68 S.W.3d at 652-53;
 Ballman
, 157 S.W.3d at 68. 
 
We overrule Eason’s sole point in cause number 14819.

IV.  Cause No. CR05-0015

 On September 1, 2004, a confidential informant to the Cross Timbers Narcotics Task Force informed Investigator Cy Crum that earlier that evening at Eason’s residence, he had observed methamphetamine in Eason’s possession; the informant and Mike Snowden were at Eason’s residence when Eason placed a baggie of what appeared to be methamphetamine on the desk in front of them and told Snowden how “that batch . . . had went bad.”   Investigator Crum relayed this information in his search warrant affidavit as follows:  “The informant advised the Affiant that the informant had been to the above described suspected place within the past 72 hours and personally observed a usable quantity of Methamphetamine/Amphetamine in the possession of EASON at said suspected place . . . .”  A search warrant was issued on September 2, 2004 at 1:55 a.m.  The search warrant provided for a no-knock entry into Eason’s home.  

Around three o’clock that morning, Investigator Crum and about twenty other officers entered Eason’s property to execute the search warrant.
(footnote: 7)  As the officers were approaching Eason’s residence, Investigator Crum saw a figure run across the inside of the home and yelled to the other officers.  The officers entered Eason’s home without knocking and found methamphetamine. 

Prior to trial, Eason filed an amended motion to suppress illegally obtained evidence, along with a request for a 
Franks 
hearing
(footnote: 8), and a supplemental motion to suppress.  After a hearing on both motions, the trial court denied Eason’s motions to suppress.

A.  
Franks v. Delaware 
Claim

In his first point in cause number CR05-0015, Eason argues that the trial court erred by denying his amended motion to suppress because the search warrant affidavit includes false statements made by Investigator Crum with reckless disregard for the truth.  Specifically, Eason contends that Investigator Crum failed to corroborate the informant’s statement that he saw Eason in possession of methamphetamine on the evening of September 1, 2004, and that Eason established by a preponderance of the evidence that he was out of town for the month of August and did not return until 1:00 a.m. on September 1, 2004.  

Under 
Franks
, if a defendant establishes by a preponderance of the evidence that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the affidavit and that, without the affidavit’s false statement, it is insufficient to establish probable cause, the search warrant must be voided.  
Id. 
at 155-56, 98 S. Ct. at 2676
; see also Hinojosa v. State, 
4 S.W.3d 240, 246 (Tex. Crim. App. 1999).  “‘Truthful’ [does not mean] that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant’s own knowledge that sometimes must be garnered hastily.” 
 Franks
, 438 U.S. at 165, 98 S. Ct. at 2681.  If an informant’s tip is the source of information, “the affidavit must recite ‘some of the underlying circumstances from which the informant concluded’ that relevant evidence might be discovered, and ‘some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was “credible” or his information “reliable.”’”  
Id.
 (citations omitted).  

At the 
Franks
 hearing in the present case, Eason testified that during August of 2004, he was working on an Indian casino construction site in Terrell, Texas.  He testified that he stayed in Terrell that month and did not return to his home until 1:00 a.m. on September 2, 2004.  However, the informant testified that he had been at Eason’s residence between 8:00 and 12:00 p.m. on September 1, 2004, and that he had seen methamphetamine in Eason’s possession.  Investigator Crum testified about essentially the same facts.  

The trial court, as the sole finder of fact, was free to believe or disbelieve all or any part of the testimony of any witness.  
Ross
, 32 S.W.3d at 855;
 Davis v. State
, 144 S.W.3d 192, 201 (Tex. App.—Fort Worth 2004, pet. ref’d) (noting that trial court’s decision at 
Franks
 hearing is reviewed under same standard as probable cause determination).  Additionally, to meet the 
Franks 
showing, the deliberate falsity or reckless disregard must be that of the affiant,

 not of any non-governmental informant.  
Franks
, 438 U.S. at 171; 98 S. Ct. at 2684.  Eason’s testimony that he did not return home until 1:00 a.m. on September 1, 2004, tends only to show that the informant’s information was false, not that Investigator Crum recklessly disregarded the truth in his search warrant affidavit.  
See Laque v. State
, 627 S.W.2d 781, 784 (Tex. App.—San Antonio 1982, pet. ref’d) (testimony from both defendant and her friend that no one else was with them, nor did they have any visitors, on date affiant’s informant said he had seen them in possession of a controlled substance at their premises was insufficient to prove reckless disregard for the truth).     

Regarding Investigator Crum’s corroboration of the informant’s tip, he testified that he knew Eason and had been on his property in the past; he testified that he had driven by Eason’s property within the seventy-two hours prior to September 1, 2004, in an attempt to determine whether Eason was at home but that he could not determine whether Eason was there.  But Investigator Crum was not required to verify every fact given by the informant; instead, he was required only to state in his affidavit “‘some of the underlying circumstances from which [he] concluded that the informant . . . was “credible” or his information “reliable.”’” 
 Franks
, 438 U.S. at 165, 98 S. Ct. at 2681.  Investigator Crum had a sufficient basis for believing that the informant was reliable; he testified that he had used the informant in the past and that he had personally verified past information given by the informant.  
See id
.; 
see also Avery v. State
, 545 S.W.2d 803, 804 (Tex. Crim. App. 1977) (noting that when an unnamed informant is relied upon in an affidavit for a search warrant, his credibility may be established by allegations that the informant has proven reliable on previous occasions).  
But see Harris v. State
, 184 S.W.3d 801, 809-810 (Tex. App.—Fort Worth 2006, pet. granted) (holding that officer’s statements in affidavit were untrue or made with reckless disregard for truth where officer failed to verify the reliability of an 
anonymous 
tip).  Here, the informant was not anonymous; in fact, he testified at the 
Franks 
hearing.  
See Clayton v. State
, 652 S.W.2d 950, 954-55 (Tex. Crim. App. 1983) (holding that no evidence of deliberate falsehood or reckless disregard for the truth existed where affidavit incorrectly stated that informant had personally observed drugs because informant testified at trial that defendants told him they were making drugs), 
cert. denied
,
 
464 U.S. 1046 (1984).  

We have reviewed the record of the 
Franks 
hearing.  Applying the appropriate standard of review, we hold that Eason did not establish by a preponderance of the evidence that Investigator Crum recklessly disregarded the truth in his search warrant affidavit. 
 See Franks
, 438 U.S. at 171, 98 S. Ct. 2674.  We overrule Eason’s first point in cause number CR05-0015.  

B.  “Knock and Announce” Rule

In his second point in cause number CR05-0015, Eason argues that the trial court erred by denying his supplemental motion to suppress because the officers failed to comply with the knock and announce requirement of the Fourth Amendment.  The State responds that the officers had reason to believe that knocking and announcing would be dangerous and would result in the destruction of evidence.  

The common law principle of “knock and announce” is an element of the reasonableness inquiry under the Fourth Amendment’s protection against unreasonable searches and seizures. 
 See Wilson v. Arkansas
, 514 U.S. 927, 930-31, 115 S. Ct. 1914, 1916 (1995).  Not every entry must be preceded by an announcement, but in order to justify a “no-knock” entry, the police must have a reasonable suspicion that knocking and announcing their presence, 
under the particular circumstances
, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. 
 Richards v. Wisconsin
, 520 U.S. 385, 394, 117 S. Ct. 1416, 1421 (1997).  The reasonable suspicion showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged.  
Id. 
at 394-95, 117 S. Ct. at 1422.  Reasonableness is evaluated at the time of the entry. 
 Id. 
at 395, 117 S. Ct. at 1422.

Here, although the search warrant authorized the officers to enter Eason’s residence without knocking and announcing their presence, Investigator Crum testified that the inclusion of that provision was an oversight.  He testified that the provision was not deleted from a previous search warrant and that he was not seeking the no-knock provision in this warrant.  Nevertheless, Investigator Crum explained that he believed the execution of this warrant was “a very dangerous situation.”  Investigator Crum testified that he and the other officers executing the warrant knew that Eason maintained video and audio surveillance at his residence; that while officers, including Crum, were executing a prior arrest warrant at Eason’s residence, Eason and several other people were walking the perimeter of the property carrying guns “trying to locate [the officers]”; that officers had previously located “a number of weapons . . . from pistols to semiautomatic rifles to shotguns” in Eason’s residence; and that Eason had a prior conviction for assault and battery with a deadly weapon.  Finally, Investigator Crum testified that as the officers were approaching Eason’s residence, he saw a figure running from one side of the residence to the other and that he yelled to the other officers.  At that point, the officers 

threw a “distraction device” through a window and entered Eason’s home without knocking.
(footnote: 9)  

Although the mere assumption that those in possession of a controlled substance are normally also in possession of firearms is insufficient as a matter of law to uphold a no-knock entry, 
see Richards
, 520 U.S. at 393, 117 S. Ct. at 1421, the State relied on much more than this assumption here. 
 Investigator Crum described Eason’s history of violence, his reason to believe that Eason possessed guns inside the home, and his reason to believe that Eason knew the officers were present.  Accordingly, we conclude that the officers had a reasonable suspicion that knocking and announcing their presence under the circumstances would be dangerous or futile or would allow the destruction of evidence. 
 See Richards
, 520 U.S. at 394, 117 S. Ct. at 1421;
 Stokes v. State
, 978 S.W.2d 674, 677 (Tex. App.—Eastland 1998, pet. ref’d) (upholding no-knock entry where officers had information from reliable informant that marijuana and guns were in the house to be searched); 
Patterson v. State
, 138 S.W.3d 643, 648 (Tex. App.—Dallas 2004, no pet.) (holding that police had reasonable suspicion to justify no-knock entry where informant told them of knives and surveillance equipment inside appellant’s home); 
cf. Price v. State
, 93 S.W.3d 358, 363-64 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d) (holding reasonableness of no-knock entry not proven where there was no threat of violence, no history of violence, no indication that arms were in appellant’s home, and no indication that appellant knew he was under suspicion).  Consequently, we hold that the trial court did not err by finding that the entry was reasonable under the circumstances.  We overrule Eason’s second point.

V.  Conclusion

Having overruled Eason’s sole point in cause number 14819, we affirm the trial court’s judgment.  Additionally, having overruled both of Eason’s points in cause number CR05-015, we affirm the trial court’s judgment.  

SUE WALKER

PANEL B: HOLMAN, WALKER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: August 3, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Eason was convicted of possession of methamphetamine in cause number 14819 and in cause number CR05-0015; these cases have been consolidated on appeal.  

3:
Tex. Code Crim. Proc. Ann.
 art. 38.23(a) (Vernon 2005).

4:
Eason testified that the other side of the gate to his property was open when the officers arrived.  

5:
In a related argument, Eason claims that he was coerced into revealing the methamphetamine in his pocket because the officers did not leave after he requested that they “leave and just forget all this happened” and because the officers threatened to get a search warrant for his mother’s house if he did not cooperate. But Deputy Bilbay testified that the officers never threatened or coerced Eason in any way, never handcuffed him, and never told him that he was not free to leave; in addition, Eason testified that the officers said they would not be making an arrest that day and that they never told him he was not free to leave.  The totality of the circumstances demonstrates no duress or coercion.  
See Schneckloth v. Bustamonte
, 412 U.S. 218, 227, 93 S. Ct. 2041, 2047-48 (1973) (holding that whether consent to search is product of duress or coercion is determined by totality of all the circumstances); 
Allridge v. State
, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991), 
cert. denied
, 510 U.S. 831 (1993) (holding that State must show by clear and convincing evidence that appellant’s consent was freely and voluntarily given),
 
cert. denied
, 510 U.S. 831 (1993) 

6:
We note that, although the trial court stated at the end of the suppression hearing that it was “having a serious problem with the issue of the no trespass” and requested additional briefing on the issue, only the State submitted additional briefing.  Eason does not argue that this statement demonstrates that the trial court resolved the factual issue in his favor, and as previously discussed, under the appropriate standard of review, we must resolve the issue in favor of the trial court’s implicit finding that there were no posted “No Trespassing” signs on Eason’s property.  
See Estrada
, 154 S.W.3d at 607; 
Johnson
, 68 S.W.3d 652-53 (applying abuse of discretion standard to trial court’s resolution of application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor). 

7:
Investigator Crum explained at the suppression hearing that the Special Operations Group assisted in executing the search warrant because he considered the warrant to be a “high-risk warrant[].”  

8:
See Franks v. Delaware
, 438 U.S. 154, 98 S. Ct. 2674 (1978).

9:
Although Investigator Crum, the only officer to testify at the suppression hearing, was not involved in entering Eason’s home and did not know whether the officers who entered the home knocked before entering, the State informed the trial court at the suppression hearing that it would “proceed as [if] it was a no-knock warrant or no-knock entry, just for simplicity sake.”