COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                       NOS.
2-05-365-CR 

       2-05-366-CR

 

 

JAMES CARROLL EASON A/K/A                                            APPELLANT

JAMES
CARROLL EASON, JR. 

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM
THE 415TH DISTRICT COURT OF PARKER COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








Appellant James Carroll Eason
appeals his convictions for possession, on two separate occasions, of more than
four but less than 200 grams of methamphetamine.[2]  After Eason entered a plea of nolo contendere
in both cause numbers, the trial court entered a judgment of guilty and
sentenced him to two years= and five years=
confinement, respectively. In three points, Eason contends that the trial court
erred by denying his motions to suppress evidence. We will affirm. 

II.  Standard of Review








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  In reviewing
the trial court=s decision,
we do not engage in our own factual review. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex.
Crim. App. 1999).  Therefore, we give
almost total deference to the trial court=s rulings on (1) questions of historical fact and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort Worth 2004, pet. ref=d).  But when the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.  Estrada v. State, 154 S.W.3d 604, 607
(Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.

When reviewing a trial court=s ruling on a mixed question of law and fact, the court of appeals may
review de novo the trial court=s application of the law of search and seizure to the facts of the
case.  Estrada, 154 S.W.3d at
607.  When there are no explicit findings
of historical fact, the evidence must be viewed in the light most favorable to
the trial court=s
ruling.  Id.

We must uphold the trial
court=s ruling if it is supported by the record and correct under any theory
of law applicable to the case even if the trial court gave the wrong reason for
its ruling.  Armendariz v. State,
123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974
(2004); Ross, 32 S.W.3d at 856; Romero, 800 S.W.2d at 543.  

III.  Cause No. 14819








On September 21, 2001, Deputy
Tony Bilbay and three other investigators went to Eason=s property to investigate a tip that Eason was distributing
methamphetamine from his home.  The
officers, who were not acting under the authority of a search warrant or with
probable cause, conducted a Aknock-and-talk@ procedure
in which they identified themselves as peace officers, explained the tip that
they had received, and asked for consent to search Eason=s residence.  Deputy Bilbay
explained to Eason that if he gave his consent to search the residence and the
officers found only a Auser amount@ of methamphetamine, they would not issue an arrest warrant until a
later date.  Eason told the officers that
he used, but did not sell, methamphetamine, and when asked if he had any
methamphetamine on him, Eason took out of his pocket three bags containing
white powder that appeared to be methamphetamine.  Deputy Bilbay then obtained Eason=s consent to search his residence, but the deputy stopped the search
because it appeared to him that Eason wished to withdraw his consent.  After Eason declined to give consent for the
officers to search his barn, the officers left his property.  Several months later, Eason was
arrested.  








In a single point, Eason
contends that the trial court erred by denying his motion to suppress evidence
because the officers obtained evidence in violation of the laws of this State
and that, consequently, the evidence should have been suppressed under article
38.23 of the Texas Code of Criminal Procedure.[3]
Specifically, Eason contends that the officers violated the criminal trespass
law by entering his property for the Aknock-and-talk@ despite the
posted ANo Trespassing@ signs.  

Article 38.23 provides that
no evidence obtained in violation of state or federal laws shall be admitted as
evidence against the accused in any criminal case. Id.  A person commits a criminal trespass if he
enters or remains on property of another without effective consent and he had
notice that the entry was forbidden or received notice to depart but failed to
do so.  Tex. Penal Code Ann. ' 30.05(a) (Vernon Supp. 2005). 
A sign posted on the property that is reasonably likely to come to the
attention of intruders indicating that entry is forbidden constitutes
notice.  Id. ' 30.05(b)(C).  








Here, at the suppression
hearing, the trial court heard conflicting testimony about whether ANo Trespassing@ signs were
posted on Eason=s property
on September 21, 2001.  Eason introduced
photographs showing a ANo
Trespassing@ sign posted
on one side of the gate to his property and a ANo Trespassing@ sign posted
on a tree just inside the gate.[4]  Eason testified that those signs had been
there since his mother first purchased the property five or six years earlier
and that they were posted the day the officers entered his property.  Eason=s mother and stepfather, who also lived on the property, and two of
Eason=s friends testified that the signs had always been posted on the
property.  On the other hand, Deputy
Bilbay and an investigator who accompanied him to Eason=s property both testified that they did not recall any ANo Trespassing@ signs on
Eason=s property; further, Deputy Bilbay testified that had he noticed any
signs, he would not have entered Eason=s property. 








 The trial court=s determination of this issue involved the evaluation of the
credibility of the witnesses.  See
Nilson v. State, 106 S.W.3d 869, 875 (Tex. App.CDallas 2003, no pet.).  By
denying Eason=s motion,
the court resolved the conflict in favor of the State and implicitly found that
ANo Trespassing@ signs were
not posted on Eason=s property
when the officers entered the property. 
The testimony of Deputy Bilbay and the investigator supports the trial
court=s implied finding, and therefore, we must defer to the trial court=s resolution of that factual determination.  See Johnson, 68 S.W.3d at 652‑53;
Guzman, 955 S.W.2d at 89; Ballman, 157 S.W.3d at 68.  Accordingly, viewing the evidence in a light
most favorable to the trial court=s ruling and assuming that the court made implicit findings of fact in
support of its ruling based on the evidence, we hold that the court, as the
sole trier of fact, could have reasonably found that the officers did not have
notice that entry onto Eason=s property was forbidden.  See
Estrada, 154 S.W.3d at 607. 








Eason also contends that the
officers committed criminal trespass by not leaving when Eason requested that
they leave.  See Tex. Penal Code Ann. ' 30.05(b)(2)(A) (defining notice to include oral or written
communication by the owner).  Eason
testified that when the officers first began talking to him, he asked them if
they Acouldn=t leave and
just forget all this happened@ and that Deputy Bilbay responded, ANo, we can=t do that.@  Eason testified that he never Aflat out@ told the
officers to leave.  Viewing this
evidence, as we must, in the light most favorable to the trial court=s ruling, we conclude that this statement can be viewed as merely a
request to drop the case, rather than a request that the officers leave the
property.[5]  See id.           Based on our disposition of Eason=s complaints, we need not determine if a violation of the criminal
trespass statute invokes article 38.23; we hold that the trial court did not
err by denying Eason=s motion to
suppress.[6]  See Johnson, 68 S.W.3d at 652‑53;
Ballman, 157 S.W.3d at 68.  We
overrule Eason=s sole point
in cause number 14819.

IV.  Cause No. CR05-0015








 On September 1, 2004, a confidential informant
to the Cross Timbers Narcotics Task Force informed Investigator Cy Crum that
earlier that evening at Eason=s residence, he had observed methamphetamine in Eason=s possession; the informant and Mike Snowden were at Eason=s residence when Eason placed a baggie of what appeared to be
methamphetamine on the desk in front of them and told Snowden how Athat batch . . . had went bad.@   Investigator Crum relayed
this information in his search warrant affidavit as follows:  AThe informant advised the Affiant that the informant had been to the
above described suspected place within the past 72 hours and personally
observed a usable quantity of Methamphetamine/Amphetamine in the possession of
EASON at said suspected place . . . .@  A search warrant was issued on
September 2, 2004 at 1:55 a.m.  The
search warrant provided for a no-knock entry into Eason=s home.  

Around three o=clock that morning, Investigator Crum and about twenty other officers
entered Eason=s property
to execute the search warrant.[7]  As the officers were approaching Eason=s residence, Investigator Crum saw a figure run across the inside of
the home and yelled to the other officers. 
The officers entered Eason=s home without knocking and found methamphetamine. 

Prior to trial, Eason filed
an amended motion to suppress illegally obtained evidence, along with a request
for a Franks hearing[8],
and a supplemental motion to suppress. 
After a hearing on both motions, the trial court denied Eason=s motions to suppress.








A. 
Franks v. Delaware Claim

In his first point in cause
number CR05-0015, Eason argues that the trial court erred by denying his
amended motion to suppress because the search warrant affidavit includes false
statements made by Investigator Crum with reckless disregard for the truth.  Specifically, Eason contends that Investigator
Crum failed to corroborate the informant=s statement that he saw Eason in possession of methamphetamine on the
evening of September 1, 2004, and that Eason established by a preponderance of
the evidence that he was out of town for the month of August and did not return
until 1:00 a.m. on September 1, 2004.  








Under Franks, if a
defendant establishes by a preponderance of the evidence that the affiant
knowingly and intentionally, or with reckless disregard for the truth, included
a false statement in the affidavit and that, without the affidavit=s false statement, it is insufficient to establish probable cause, the
search warrant must be voided.  Id. at
155‑56, 98 S. Ct. at 2676; see also Hinojosa v. State, 4 S.W.3d
240, 246 (Tex. Crim. App. 1999).  A>Truthful= [does not
mean] that every fact recited in the warrant affidavit is necessarily correct,
for probable cause may be founded upon hearsay and upon information received
from informants, as well as upon information within the affiant=s own knowledge that sometimes must be garnered hastily.@  Franks, 438 U.S. at
165, 98 S. Ct. at 2681.  If an informant=s tip is the source of information, Athe affidavit must recite >some of the underlying circumstances from which the informant
concluded= that
relevant evidence might be discovered, and >some of the underlying circumstances from which the officer concluded
that the informant, whose identity need not be disclosed, . . . was Acredible@ or his
information Areliable.@=@  Id. (citations
omitted).  

At the Franks hearing
in the present case, Eason testified that during August of 2004, he was working
on an Indian casino construction site in Terrell, Texas.  He testified that he stayed in Terrell that
month and did not return to his home until 1:00 a.m. on September 2, 2004.  However, the informant testified that he had
been at Eason=s residence
between 8:00 and 12:00 p.m. on September 1, 2004, and that he had seen
methamphetamine in Eason=s
possession.  Investigator Crum testified
about essentially the same facts.  

The trial court, as the sole
finder of fact, was free to believe or disbelieve all or any part of the
testimony of any witness.  Ross,
32 S.W.3d at 855; Davis v. State, 144 S.W.3d 192, 201 (Tex. App.CFort Worth 2004, pet. ref=d) (noting that trial court=s decision at Franks hearing is reviewed under same standard as
probable cause determination). 
Additionally, to meet the Franks showing, the deliberate falsity
or reckless disregard must be that of the affiant,








 not of any
non‑governmental informant.  Franks,
438 U.S. at 171; 98 S. Ct. at 2684. 
Eason=s testimony
that he did not return home until 1:00 a.m. on September 1, 2004, tends only to
show that the informant=s
information was false, not that Investigator Crum recklessly disregarded the
truth in his search warrant affidavit.  See
Laque v. State, 627 S.W.2d 781, 784 (Tex. App.CSan Antonio 1982, pet. ref=d) (testimony from both defendant and her friend that no one else was
with them, nor did they have any visitors, on date affiant=s informant said he had seen them in possession of a controlled
substance at their premises was insufficient to prove reckless disregard for
the truth).     








Regarding Investigator Crum=s corroboration of the informant=s tip, he testified that he knew Eason and had been on his property in
the past; he testified that he had driven by Eason=s property within the seventy-two hours prior to September 1, 2004, in
an attempt to determine whether Eason was at home but that he could not
determine whether Eason was there.  But
Investigator Crum was not required to verify every fact given by the informant;
instead, he was required only to state in his affidavit A>some of the underlying circumstances from which [he] concluded that
the informant . . . was Acredible@ or his information Areliable.@=@  Franks, 438 U.S. at
165, 98 S. Ct. at 2681.  Investigator
Crum had a sufficient basis for believing that the informant was reliable; he
testified that he had used the informant in the past and that he had personally
verified past information given by the informant.  See id.; see also Avery v. State,
545 S.W.2d 803, 804 (Tex. Crim. App. 1977) (noting that when an unnamed
informant is relied upon in an affidavit for a search warrant, his credibility
may be established by allegations that the informant has proven reliable on
previous occasions).  But see Harris
v. State, 184 S.W.3d 801, 809-810 (Tex. App.CFort Worth 2006, pet. granted) (holding that officer=s statements in affidavit were untrue or made with reckless disregard
for truth where officer failed to verify the reliability of an anonymous tip).  Here, the informant was not anonymous; in
fact, he testified at the Franks hearing.  See Clayton v. State, 652 S.W.2d 950,
954-55 (Tex. Crim. App. 1983) (holding that no evidence of deliberate falsehood
or reckless disregard for the truth existed where affidavit incorrectly stated
that informant had personally observed drugs because informant testified at
trial that defendants told him they were making drugs), cert. denied,
464 U.S. 1046 (1984).  

We have reviewed the record
of the Franks hearing.  Applying
the appropriate standard of review, we hold that Eason did not establish by a
preponderance of the evidence that Investigator Crum recklessly disregarded the
truth in his search warrant affidavit.  See Franks, 438 U.S. at 171, 98 S. Ct.
2674.  We overrule Eason=s first point in cause number CR05-0015.  

 








B. 
AKnock and
Announce@ Rule

In his second point in cause
number CR05-0015, Eason argues that the trial court erred by denying his
supplemental motion to suppress because the officers failed to comply with the
knock and announce requirement of the Fourth Amendment.  The State responds that the officers had
reason to believe that knocking and announcing would be dangerous and would
result in the destruction of evidence.  

The common law principle of Aknock and announce@ is an element of the reasonableness inquiry under the Fourth
Amendment=s protection
against unreasonable searches and seizures.  See Wilson v. Arkansas, 514 U.S. 927, 930‑31,
115 S. Ct. 1914, 1916 (1995).  Not every
entry must be preceded by an announcement, but in order to justify a Ano‑knock@ entry, the
police must have a reasonable suspicion that knocking and announcing their
presence, under the particular circumstances, would be dangerous or
futile, or that it would inhibit the effective investigation of the crime by,
for example, allowing the destruction of evidence.  Richards v. Wisconsin, 520 U.S. 385, 394,
117 S. Ct. 1416, 1421 (1997).  The
reasonable suspicion showing is not high, but the police should be required to
make it whenever the reasonableness of a no-knock entry is challenged.  Id. at 394‑95, 117 S. Ct. at
1422.  Reasonableness is evaluated at the
time of the entry.  Id. at 395,
117 S. Ct. at 1422.








Here, although the search
warrant authorized the officers to enter Eason=s residence without knocking and announcing their presence,
Investigator Crum testified that the inclusion of that provision was an
oversight.  He testified that the provision
was not deleted from a previous search warrant and that he was not seeking the
no-knock provision in this warrant. 
Nevertheless, Investigator Crum explained that he believed the execution
of this warrant was Aa very
dangerous situation.@  Investigator Crum testified that he and the
other officers executing the warrant knew that Eason maintained video and audio
surveillance at his residence; that while officers, including Crum, were
executing a prior arrest warrant at Eason=s residence, Eason and several other people were walking the perimeter
of the property carrying guns Atrying to locate [the officers]@; that officers had previously located Aa number of weapons . . . from pistols to semiautomatic rifles to
shotguns@ in Eason=s residence;
and that Eason had a prior conviction for assault and battery with a deadly
weapon.  Finally, Investigator Crum
testified that as the officers were approaching Eason=s residence, he saw a figure running from one side of the residence to
the other and that he yelled to the other officers.  At that point, the officers 








threw a Adistraction device@ through a window and entered Eason=s home without knocking.[9]  








Although the mere assumption
that those in possession of a controlled substance are normally also in
possession of firearms is insufficient as a matter of law to uphold a no-knock
entry, see Richards, 520 U.S. at 393, 117 S. Ct. at 1421, the State
relied on much more than this assumption here. 
Investigator Crum described Eason=s history of violence, his reason to believe that Eason possessed guns
inside the home, and his reason to believe that Eason knew the officers were
present.  Accordingly, we conclude that
the officers had a reasonable suspicion that knocking and announcing their
presence under the circumstances would be dangerous or futile or would allow
the destruction of evidence.  See
Richards, 520 U.S. at 394, 117 S. Ct. at 1421; Stokes v. State, 978
S.W.2d 674, 677 (Tex. App.CEastland 1998, pet. ref=d) (upholding no-knock entry where officers had information from
reliable informant that marijuana and guns were in the house to be searched); Patterson
v. State, 138 S.W.3d 643, 648 (Tex. App.CDallas 2004, no pet.) (holding that police had reasonable suspicion to
justify no-knock entry where informant told them of knives and surveillance
equipment inside appellant=s home); cf. Price v. State, 93 S.W.3d 358, 363-64 (Tex. App.CHouston [14th Dist.] 2002, pet. ref=d) (holding reasonableness of no-knock entry not proven where there
was no threat of violence, no history of violence, no indication that arms were
in appellant=s home, and
no indication that appellant knew he was under suspicion).  Consequently, we hold that the trial court
did not err by finding that the entry was reasonable under the
circumstances.  We overrule Eason=s second point.

V.  Conclusion

Having overruled Eason=s sole point in cause number 14819, we affirm the trial court=s judgment.  Additionally,
having overruled both of Eason=s points in cause number CR05-015, we affirm the trial court=s judgment.  

 

 

 

SUE
WALKER

 

PANEL B:   HOLMAN,
WALKER, and MCCOY, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED: August 3,
2006











[1]See Tex. R. App. P. 47.4.





[2]Eason was convicted of possession
of methamphetamine in cause number 14819 and in cause number CR05-0015; these
cases have been consolidated on appeal.  





[3]Tex. Code Crim. Proc. Ann. art.
38.23(a) (Vernon 2005).





[4]Eason testified that the other side
of the gate to his property was open when the officers arrived.  





[5]In a related argument, Eason claims
that he was coerced into revealing the methamphetamine in his pocket because
the officers did not leave after he requested that they Aleave and just forget all this
happened@ and because the officers
threatened to get a search warrant for his mother=s house if he did not cooperate.
But Deputy Bilbay testified that the officers never threatened or coerced Eason
in any way, never handcuffed him, and never told him that he was not free to
leave; in addition, Eason testified that the officers said they would not be
making an arrest that day and that they never told him he was not free to
leave.  The totality of the circumstances
demonstrates no duress or coercion.  See
Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S. Ct. 2041, 2047-48
(1973) (holding that whether consent to search is product of duress or coercion
is determined by totality of all the circumstances); Allridge v. State,
850 S.W.2d 471, 493 (Tex. Crim. App. 1991), cert. denied, 510 U.S. 831
(1993) (holding that State must show by clear and convincing evidence that
appellant=s consent was freely and
voluntarily given), cert. denied, 510 U.S. 831 (1993) 





[6]We note that, although the trial
court stated at the end of the suppression hearing that it was Ahaving a serious problem with the
issue of the no trespass@ and requested additional briefing
on the issue, only the State submitted additional briefing.  Eason does not argue that this statement
demonstrates that the trial court resolved the factual issue in his favor, and
as previously discussed, under the appropriate standard of review, we must
resolve the issue in favor of the trial court=s implicit finding that there were
no posted ANo Trespassing@ signs on Eason=s property.  See Estrada, 154 S.W.3d at 607; Johnson,
68 S.W.3d 652‑53 (applying abuse of discretion standard to trial court=s resolution of application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor). 





[7]Investigator Crum explained at the
suppression hearing that the Special Operations Group assisted in executing the
search warrant because he considered the warrant to be a Ahigh-risk warrant[].@ 






[8]See Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674
(1978).





[9]Although Investigator Crum, the
only officer to testify at the suppression hearing, was not involved in
entering Eason=s home and did not know whether the
officers who entered the home knocked before entering, the State informed the
trial court at the suppression hearing that it would Aproceed as [if] it was a no-knock
warrant or no-knock entry, just for simplicity sake.@