Opinion issued December 20, 2007









 









In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00744-CR

____________


SAM HENRY DAVIS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 240th District Court

Fort Bend County, Texas

Trial Court Cause No. 40,467A






MEMORANDUM OPINION

 A jury found appellant, Sam Henry Davis, guilty of the offense of possession
with intent to deliver a controlled substance, namely cocaine, weighing more than
four grams but less than two hundred grams, in a drug-free zone. (1) After finding true
the allegations in three enhancement paragraphs that appellant had three prior felony
convictions, the trial court assessed his punishment at confinement for fifty years. In
two points of error, appellant contends that the trial court erred in denying his motion
to suppress evidence as the "no-knock provision of the search warrant was not
reasonable" and that his "oral statement was a product of custodial interrogation,"
making his written statement "tainted" by "the first unwarned oral statement."

 We affirm.

Factual and Procedural Background

 Prior to trial, appellant filed a motion to suppress evidence, alleging that the
"scope and inquiry" of the search of his apartment was unreasonable because of the
"failure to knock and announce" and that "all statements given were without
appropriate warnings, were involuntarily given, and without counsel." 

 At the pretrial hearing on the motion, Rosenberg Police Department Detective
A. Slater, assigned to the Fort Bend Narcotics Task Force, testified that he began
investigating appellant after receiving "several narcotics complaints from citizens
from the City of Rosenberg and also officers from the Rosenberg Police Department." 
Slater knew appellant by name from "several cases in the past" and from interacting
with appellant while Slater was a "street cop." A confidential informant told Slater
that he had "regularly" seen appellant, also known as "Booger Bear," selling narcotics
from his apartment. Under Slater's supervision, the informant successfully purchased
crack cocaine from appellant at his apartment. The informant told Slater that after he
knocked on appellant's door and appellant opened it, the informant handed appellant
money, and appellant handed the informant the crack cocaine. Based on this
information and Slater's observations, Slater drafted a search warrant for appellant's
apartment.

 In his affidavit in support of the search warrant, Detective Slater testified that,

VI.) Affiant believes it would be futile, dangerous, and would
otherwise inhibit the effective investigation of the offense or
offenses related to the purpose of this warrant if required to knock
and announce police presence as set out by the following:


A.) Your Affiant conducted a criminal history check on
[appellant] and learned the following: [appellant] is
currently on [p]arole for the offense of possession of
dangerous drugs. He also shows to have been
arrested for offenses of assault on a public servant,
aggravated assault, burglary, dangerous drugs, theft,
obstructing police, and evading arrest. [Appellant]
received final convictions for [a]ssault on a [p]eace
[o]fficer and two separate convictions for [e]vading
[a]rrest.


B.) Affiant has personally observed [appellant] with a
pit bull type dog inside the residence. This breed is
known to this affiant to be particularly vicious and
often used for protection.


C.) Affiant has received reports from Rosenberg [p]olice
officers familiar with [appellant] who have relayed
past encounters where [appellant] displayed a
violent temperament and fought with police officers.


The magistrate who signed the search warrant found that,

[T]he affiant has established probable cause to believe that to knock and
announce their purpose by the officers executing this warrant would be
futile, dangerous, and otherwise inhibit the effective investigation of the
offense or offenses related to the purpose of this warrant. Therefore,
unless circumstances of the contrary are discovered prior to entry, you
are hereby authorized to dispense with the usual requirement that you
knock and announce your purpose before entering the suspected place
to execute this warrant.


 Detective Slater explained at the hearing that, prior to obtaining the warrant,
he had seen appellant walking a pit bull on a leash outside of appellant's residence. 
Slater "never looked through [appellant's] window and saw the dog," but had
"personally seen [appellant] walk the dog back into the residence." He also stated
that it is "very common for narcotic[s] dealers to use pit bulls for protection and,
really, to protect their assets and their drugs." Slater noted that this is what he meant
in his affidavit when he testified that he saw the pit bull "inside" appellant's
residence. When questioned as to whether his statement in his affidavit supporting
the search warrant was "true and correct," Slater responded, "Yes." Other than what
appears in his affidavit, Slater provided no additional information to the magistrate.

 After obtaining the search warrant, Detective Slater contacted the Rosenberg
Police Department and requested a tactical team to assist with the execution of the
search warrant. Based on the concerns outlined in his affidavit and in the warrant, the
police officers "did not knock and announce," and instead executed the search
warrant by "busting down" the front door of appellant's apartment. Upon entering
the two-bedroom apartment, Slater saw appellant lying in bed in the "master
bedroom" with a woman lying next to him. Slater agreed with defense counsel's
statement that if appellant had gotten up out of bed and said, "I'm leaving," Slater
would not have allowed him to leave "[b]ased on finding the cocaine." At this point,
appellant was not free to leave and "was being detained." After Slater told appellant
that he was "there for a narcotics-related search warrant," appellant told Slater "that
he knew what we were here for." Appellant then, voluntarily, with no questioning
from Slater, led Slater to the left side of the bed and used his foot to point out cocaine
and told Slater that the cocaine was his. (2) At the Rosenberg Police Station, after
appellant had been placed under arrest and given his legal warnings, he waived his
right to have an attorney present and provided a written statement.

 At the conclusion of the hearing, the trial court denied appellant's motion to
suppress evidence. (3)

Standard of Review

 Our standard for reviewing a trial court's ruling on a motion to suppress
evidence is bifurcated; we give almost total deference to a trial court's determination
of historical facts and review de novo the court's application of the law. Maxwell v.
State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). In reviewing a ruling on a
question of the application of law to facts, we review the evidence in the light most
favorable to the trial court's ruling. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997). At a suppression hearing, the trial court is the sole and exclusive trier
of fact and judge of the witnesses' credibility. Maxwell, 73 S.W.3d at 281. 
Accordingly, the trial court may choose to believe or to disbelieve all or any part of
the witnesses' testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

 In reviewing a trial court's ruling, we generally consider only evidence
adduced at the suppression hearing because the ruling was based on it rather than
evidence introduced later. Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App.
1996). However, this general rule is inapplicable when the parties consensually
relitigate the suppression issue during the trial on the merits. Id. When the State
raises the issue at trial either without objection or with subsequent participation in the
inquiry by the defense, the defendant has made an election to reopen the evidence,
and consideration of the relevant trial testimony is appropriate in our review. Id. In
the instant case, because appellant fully participated in the relitigation of the issue
during the trial, we consider Detective Slater's trial testimony in our review of the
trial court's suppression ruling.

"No-Knock" Search Warrant

 In his first point of error, appellant argues that the trial court erred in denying
his motion to suppress evidence because the "no-knock provision of the search
warrant was not reasonable, thus any evidence resulting from said unlawful search
should be suppressed." See U.S. Const. amend IV. 

 The Fourth Amendment guarantees that people shall be free from unreasonable
searches and seizures. Id. Police officers entering a dwelling generally must
announce their presence and provide residents an opportunity to open the door, and
this "ancient" knock-and-announce requirement is a "command" of the Fourth
Amendment. Hudson v. Michigan, --- U.S. ----, 126 S. Ct. 2159, 2162 (2006). 
However, police officers need not knock and announce when circumstances present
a threat of physical violence, there is a reason to believe that evidence would likely
be destroyed if advance notice were given, or if knocking and announcing would be
"futile." Id. at 2162-63. Police officers are only required to have "'reasonable
suspicion . . . under the particular circumstances' that one of these grounds for failing
to knock and announce exists." Id. at 2163 (quoting Richards v. Wisconsin, 520 U.S.
385, 394, 117 S. Ct. 1416, 1421 (1997)). Moreover, "'[t]his showing is not high.'"
Id. (quoting Richards, 520 U.S. at 394, 117 S. Ct. at 1422).

 Appellant first argues that the no-knock provision of the search warrant was
unreasonable because, in the affidavit in support of the search warrant, Detective
Slater stated that he had observed appellant "with a pit bull type dog inside the
residence," but on cross-examination, Slater testified that he only saw the dog outside
on a leash. (Emphasis added). He asserts that examining the affidavit without this
statement "leaves the State to rely upon" appellant's "prior single violent conviction
and the prior contacts with law enforcement in which [a]ppellant showed a violent
temperament," thus leaving inadequate "evidence to support the no-knock provision
of the warrant." 

 In order for a statement in an affidavit to be disregarded in determining whether
the affidavit sets out probable cause, "[t]here must be allegations of deliberate
falsehood or of reckless disregard for the truth, and those allegations must be
accompanied by an offer of proof." Franks v. Delaware, 438 U.S. 154, 171, 98 S. Ct.
2674, 2684 (1978); see Taylor v. State, 604 S.W.2d 175, 177 (Tex. Crim. App. 1980). 
Allegations of negligence or innocent mistake are insufficient. Franks, 438 U.S. at
171, 98 S. Ct. at 2684. Although appellant asserts that Detective Slater "made a
knowing and reckless false assertion within the affidavit," Slater testified that he was
not aware that any of the information in his affidavit was false. Furthermore, as a
result of seeing appellant walk the pit bull outside of his apartment and back into the
apartment, it was reasonable, and most likely correct, for Slater to infer that the pit
bull did in fact spend time inside the apartment. 

 Second, appellant argues that the no-knock provision of the search warrant was
unreasonable because, in his affidavit, Detective Slater stated that appellant had an
extensive criminal record, including a conviction for a violent offense, but during
cross-examination of Slater, "it was revealed that the single violent criminal
conviction . . . occurred approximately twenty-five (25) years ago." Appellant, citing
Texas Rule of Evidence 609(b), asserts that the "staleness of the prior conviction"
should be a "considering factor when viewing the sufficiency of the affidavit in
support of this warrant." See Tex. R. Evid. 609(b) ("Evidence of a conviction under
this rule is not admissible if a period of more than ten years has elapsed since the date
of the conviction . . . unless the court determines . . . that the probative value of the
conviction . . . substantially outweighs its prejudicial effect."). However, appellant
does not cite any authority that the use of a conviction occurring twenty-five years
ago cannot be considered in support of a no-knock warrant. We note that, in the
criminal context, evidentiary rules are intended to be consistent with the standard that
guilt must be proved beyond a reasonable doubt. See Brinegar v. United States, 338
U.S. 160, 174, 69 S. Ct. 1302, 1310 (1949). "The inappropriateness of applying the
rules of evidence as a criterion to determine probable cause is apparent in the case of
an application for a warrant before a magistrate." Id. at 174 n.12, 69 S. Ct. at 1310
n.12; see also Granados v. State, 85 S.W.3d 217, 227 (Tex. Crim. App. 2002) (noting
that, with exception of privileges, rules of evidence do not apply to suppression
hearings). We cannot conclude that the age of appellant's conviction for assault of
a police officer precluded Detective Slater from reasonably suspecting that appellant
presented a threat of physical violence, especially considering his previous arrests for
aggravated assault, obstructing police, and evading arrest.

 Third, appellant argues that the no-knock provision of the search warrant was
unreasonable because, in the affidavit in support of the search warrant, Detective
Slater stated that he had received reports from police officers that appellant displayed
a violent temperament and fought with police officers, but Slater "fails to mention the
time frame for which we are to consider these violent encounters." Similar to his
argument above, appellant cites no authority that it was necessary for the State "to
mention the time frame for which we are to consider these violent encounters." 
Moreover, a past history of convictions and violent encounters may be a factor in
establishing a reasonable suspicion in support of a no-knock search warrant. See
United States v. Boulanger, 444 F.3d 76, 82 (1st Cir. 2006) (defendant's twenty-year-old conviction was considered as part of totality of circumstances in establishing
reasonable suspicion for no-knock entry). 

 Fourth, appellant argues that the no-knock provision of the search warrant was
unreasonable because, in the affidavit in support of the search warrant, Detective
Slater stated that pit bulls are known to be vicious, but on cross-examination, he
testified that "he has had no contact with the animal before" and did not "mention if
the dog acted aggressively." Appellant asserts that a "conclusory statement that the
dog is vicious or would be a threat to officers is insufficient to support a no-knock
warrant." (4) However, a reasonable police officer could infer from his knowledge and
experience that such a pit bull may pose a threat to officers' safety. See United States
v. Jewell, 60 F.3d 20, 24 (1st Cir. 1995) (stating that no-knock entry was justified
when defendant kept pit bull in apartment and had history of violent crimes); United
States v. Buckley, 4 F.3d 552, 558 (7th Cir. 1993) (noting that no-knock entry was
justified when defendants possessed pit bull and firearms). 

 Finally, appellant argues that the no-knock provision of the search warrant was
unreasonable because "the affidavit contains no information about any weapons of
any kind." Although the presence of weapons inside a residence may be a factor in
determining whether the issuance of a no-knock search warrant is justified, the test
is whether, under the particular circumstances, the police officers have a reasonable
suspicion that knocking and announcing their presence would be dangerous or futile
or would inhibit the effective investigation of the crime by, for example, allowing the
destruction of evidence. Hudson, 126 S. Ct. at 2162-63. In light of the presence of
a pit bull, appellant's previous convictions, and testimony about his violent
temperament, we hold that the lack of evidence of weapons at appellant's apartment
did not render the no-knock provision of the search warrant unreasonable.

 Accordingly, we hold that, under the circumstances, the no-knock provision of
the search warrant was not unreasonable and that the trial court did not err in denying
appellant's motion to suppress evidence on the ground that the provision was
unreasonable. (5)

 We overrule appellant's first point of error.

Custodial Interrogation

 In his second point of error, appellant argues that the trial court erred in not
suppressing his "oral and written statement as the oral statement was a product of
custodial interrogation and [the] written statement was tainted [by] the first unwarned
oral statement" because appellant "was clearly in custody at the time officers placed
handcuffs on [a]ppellant and escorted hi[m] outside the home." He asserts that
Detective Slater "should have known his statement was likely to elicit an
incriminating response."

 In Texas, certain requirements for admitting an accused's oral and written
statements must be met when those statements are made as a result of a "custodial
interrogation." See Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon 2005). 
However, a statement that does not stem from custodial interrogation does not have
to meet these requirements. Id. art. 38.22, § 5 (Vernon 2005) (noting that nothing in
article "precludes the admission of . . . statement that does not stem from custodial
interrogation"). Custodial interrogation occurs when a defendant is in custody and
exposed "'to any words or actions on the part of the police (other than those normally
attendant to arrest and custody) that the police should know are reasonably likely to
elicit an incriminating response.'" Jones v. State, 795 S.W.2d 171, 174 (Tex. Crim.
App. 1990) (quoting Rhode Island v. Innis, 446 U.S. 291, 300-02, 100 S. Ct. 1682,
1689-90 (1980)). Not all remarks made by police officers once a suspect is in
custody can be classified as "interrogation." See id. at 174. Specifically, remarks not
designed to elicit any kind of response do not constitute interrogation. Camarillo v.
State, 82 S.W.3d 529, 535-36 (Tex. App.--Austin 2002, no pet.).

 Here, during Detective Slater's testimony at the pretrial hearing on the motion
to suppress evidence, appellant objected to the admissibility of any statements that
he made after Slater entered the bedroom and saw the cocaine. However, Slater
testified that after he told appellant that the purpose of the search warrant was
narcotics-related, appellant voluntarily, with no questioning from Slater, told Slater
the location of the cocaine. See Innis, 446 U.S. at 300-01, 100 S. Ct. at 1689
(reasoning that in order to interrogate, suspect must be subjected "to either express
questioning or its functional equivalent"); Camarillo, 82 S.W.3d at 534 (noting that
defendant's unsolicited response to police officer identifying himself was not product
of interrogation).

 Accordingly, we hold that appellant's statement as to the location of the
cocaine was not the result of words or actions reasonably likely to elicit an
incriminating response.

 We overrule appellant's second point of error.

Conclusion

 We affirm the judgment of the trial court.





 Terry Jennings

 Justice


Panel consists of Justices Nuchia, Jennings, and Keyes.


Do not publish. Tex. R. App. P. 47.2(b). 
1. See Tex. Health & Safety Code Ann. § 481.102(3)(D) (Vernon Supp. 2007), §
481.112 (a), (d) (Vernon 2003), § 481.134 (Vernon Supp. 2007).
2. Initially, Detective Slater testified that he saw the cocaine when he was in appellant's
bedroom, while appellant was lying on the bed.
3. Detective Slater also testified during the trial. After the State offered the search
warrant into evidence, appellant renewed his objection made during the pretrial
hearing, and the trial court overruled the objection. Appellant subsequently requested
a running objection.
4. In support of his assertion that a "conclusory statement that the dog is vicious or
would be a threat to officers is insufficient to support a no-knock warrant," appellant
cites People v. Wright, 697 N.E.2d 693 (Ill. 1998). Wright, however, is inapplicable. 
In Wright, the court held unconstitutional an Illinois statute that provided that a judge
may order a no-knock warrant if firearms in a building are accessible to any occupant. 
Id. at 695-96. Here, Detective Slater testified that appellant owned a vicious dog and
had a criminal history that included crimes of violence. 
5. Appellant concedes that the United States Supreme Court, in Hudson v. Michigan,
held that a violation of the "knock and announce" rule does not justify the suppression
of evidence found in the execution of a search warrant. --- U.S. ----, 126 S. Ct. 2159,
2168 (2006). However, appellant further argues that the Texas Constitution "affords
[him] greater protections than those [announced] by the U.S. Supreme Court in
Hudson." Having held that the no-knock provision of the search warrant in this case
was not unreasonable, we need not address this argument.